Nott, J.,
delivered the opinion of the court:
In the first or parent case which this claimant brought against the defendants, the theory of his demand was that the government had taken his property absolutely, for which he should recover either the full compensation which is given whenever private property is taken for public use, or the ample damages which the law accords to a party injured by trespass.” This. compensation or damage was laid at $2,000,000.
"When the case came to be tried, we were satisfied that the government had not taken his property for a fixed military reservation, but, on the contrary, occupied it temporarily and at its own will. It was the first case which had ever come before the court where the question of title to land was in controversy,- and the court had to settle a general principle applicable to all cases which were similar in effect to actions in ejectment, and yet in which the defendants, though defeated, could not be ejected.
When a person wrongfully enters upon an estate, he who has the right of possession may evict him; or, if one acquires 'an *250 apparent right of possession, be wbo bas tbe actual right may-eject him at law, and have damages in tbe nature of mesne profits for tbe withholding. But such possessory actions cannot" be brought against tbe government. Though it enters against the consent of the owner and holds without having a right of property, it still holds rightfully under its right of eminent domain. The holding being lawful, the question is, upon what terms does the government hold ? This question the Constitution answers by the words “just compensation.” The use and Occupation are private property “taken for public use,” and thé supreme laiv of the land fixes the rent at a “just compensation.” It is this provision of the Constitution which upholds our general doctrine of implied contracts; for damages quantum meruit are nothing more or less, in the absence of an express contract or of an appraisem ent by legislative discretion, than the ‘ j ust compensation” of the Constitution. We accordingly determined that, when the government has entered upon the realty of a citizen, on his right of property being established, the government should be deemed to have entered as his tenant under an implied lease, whereof the “just compensation” secured by the - Constitution to those whose property is taken for public use should be the rent.
When we came to estimate this implied rent we endeavored to establish a principle which should prevent and render needless just such suits as this. Our purpose was to make the rent fixed and certain, so that the executive departments could estimate and Congress appropriate for it, and the lessor have neither the necessity nor the option of going into a court of law and retrying his action every time he wanted to collect his rent. We therefore held that “the measure of the damages must be limited to the value of the temporary occupancy, ais though the claimant had leased and the government had rented the premises, regard being paid to the nature of the occupancy and to the fact that the government held the option of discontinuing the implied tenancy on any day, or of retaining it indefinitely f and that there might be no misunderstanding on the part of the proper department, we added, “ The amount thus found may be regarded in future as the established and agreed rent of the premises so long as the government -shall elect to occupy under the implied lease.”
*251 In tins estimating tbe value of tbe rent, tbe court went back to tbe beginning of tbe occupancy and endeavored to stand in tbe position of tbe parties, assuming tbat “ tbe claimant was willing to lease, and tbe government was willing to rent, tbe premises, witb tbe rights and privileges, and upon tbe conditions before enumerated, at tbe fair or market value of an annual rent.”
Since tbe first action was tried, tbe government bas justified tbe decision of tbe court by discontinuing tbe military post at tbe Cascades, and restoring tbe premises to tbe claimant. But tbe rent wliicb accrued between tbe bringing of tbe former action and tbe discontinuing of tbe occupancy bas not been paid; and it is contended on tbe part of tbe defendants tbat tbe rule laid down in tbe former ease should bo abandoned, and in tbe stead thereof tbe court should estimate, on new evidence, tbe actual value of tbe occupancy for tbe period set forth in this petition.
Such a course would be contrary to tbe customs of men who always look forward and not backward, when estimating tbe value of a rental, and do not wait till after tbe one bas lost and tbe other bas enjoyed tbe use of tbe premises before agreeing upon tbe price to be paid. It would, moreover, give to the lessor a great advantage over tbe government, by enabling him to rest on tbe value already put upon tbe occupancy, or to seize upon a favorable season of high prices to come into court and obtain a new appraisement. But chiefly is it objectionable because it would leave tbe rent uncertain and undetermined, subjecting tbe government to endless suits, giving excuse to tbe departments for neglecting their plain duty of estimating and procuring appropriations, and making this court tbe only instrument for collecting all tbe rents which tbe government might owe under like circumstances.
Tbe demurrer is overruled, and tbe defendants will answer over.