Milligan, J.,
delivered the opinion of the court:
In 1863 the claimant filed his petition in this court, claiming compensation for the occupation by the Government of the United States of 320 acres of land, situated at the lower cascades of the Columbia Biver, in Washington Territory. His right to recover on the trial of that case was severely contested; and after a patient hearing and careful examination of every question that the ingenuity of counsel could suggest, the court in an elaborate opinion, among other things, held the claimant entitled to recover his reasonable rents and profits, which it fixed at $6,500 per annum, from the 30th of April, 1856, to the *247 30th of April, 1863, and gave judgment accordingly. (2 C. Cls. R., 391.)
After the rendition of this judgment, which still remains in force, the United States continued to occupy the same lauds as theretofore, from the 30th of April, 1863, to 6th of February, 1867, when they were abandoned and restored to the claimant.
The present petition now claims the rents» which accrued from the time to which they were recovered in the former suit until the premises were surrendered by the defendants — a period of three years, nine months, and six days, next ensuing after the 30th of April, 1863.
The case presented in this petition is identical with the former, and rests substantially upon the same proof, which has been refiled in this case. Uothing additional has been offered on either side, except the claimant shows a patent for the land claimed, issued to him soon after the premises were relinquished by the Government as a military post; and the defendants produce the testimony of a single witness, tending to affect the yearly value of the occupancy adjudged in the former suit.
Subsequently, however, to filing the present petition, the defendants demurred thereto, and the cause came on to be heard on the demurrer, at the December term, 1868, when the ground occupied by the former decision was reviewed, re-affirmed, and the demurrer overruled.
.In reviewing the ground on which this case rests, the court established the following propositions :
I. “ Ejectment, as a possessory action, does not lie against the Government, for the Government always has the ‘ right of possession,’ founded either on a { right of property ’ or on its right of eminent domain. But when, in an action in the nature of ejectment, the claimant’s £ right of property ’ is established, the Government will be deemed to have entered as his tenant under an implied lease, whereof the £just compensation ’ secured by the Constitution to those whose property is taken for the public use is the rent.”
II. “ When the Government has entered upon land, and holds under an implied -lease, the measure of the damages must be limited to the value of the occupancy, as though the claimant had leased and the Government had rented the premises, regard being paid to the nature of the occupancy and to the fact that the Government holds the option of discontinuing the implied tenancy at any time, or continuing it indefinitely.”
*248 III. “On the ‘right of property’ in land held by the Government being found to be in a citizen, and the implied rent, i. e., the yearly value of the occupancy, being judicially established, it will remain fixed, as though the parties had leased and rented the premises on those terms. On the part of the claimant a second action to obtain a re-appraisement of rent accruing since lift first action was brought cannot be sustained; on the part of.the Government itwill be the duty of the proper executive department and of Congress to procure and make the needful appropriations for paying the implied yearly rent so long as the Government retain possession.” (4 C. Cls. R., p. 248.)
Since the decision of this case on the demurrer, the claimant has made no serious attempt to obtain a re-appraisement of the rents. In his petition he avers that the rent of hig property was worth more during the last four years of its occupancy by the United States than for the preceding years for which he has been paid; but he contents himself with asking, both in the petition and in the argument on the merits, for no greater sum, if the court shall adjudge itself bound by the former decision, than the fair and reasonable rents fixed in its former judgment; and thus brings himself directly within' the previous rulings of this court.
The question of jurisdiction, so elaborately discussed in the parent case, and again reviewed and affirmed in the opinion of the court on the demurrer in this case, is no longer an open question here. It is, so far as that question is concerned, res judicata, and must remain as the settled judgment of the court in this case.
So also as to the yearly value of the occupancy, it being judicially determined, will remain as the established measure of the claimant’s right of recovery in this action.
In the parent suit two important points were decided, both of which have been confirmed by the subsequent action of the Government: First, that the claimant, by his compliance with the requirements of the “ Oregon Donation Act,” and acts amendatory thereto, was clothed with an inheritable and alienable estate; and, second, that the military occupation and alleged reservation of the premises by the Government were irregular, and not within the meaning of the “ Oregon Donation Act.”
*249 Since this decision the Government has relinquished their claim to the land, abandoned it as a military reservation, and granted a patent for it to the claimant, without any other or different consideration than that which existed prior to the first decision in this case.
The ground assumed by the Assistant Attorney-General, that the court in the former suit had no right to fix the annual value of the occupancy of the land for a period subsequent to the date of the judgment, cannot be sustained. It does not matter that the judgment as against the Government was in invitum, or whether it did or did not form the basis of a contract between the parties. It was, nevertheless, a judicial determination of the measure of damages for the temporary occupancy of the lands, of which the Government had full notice. After the rule of damages was thus established, it was optional with the Government either to surrender the premises and make a new contract, or hold over under the old implied agreement. It elected the latter, and must be held to the legitimate consequences flowing from its own act.
The whole case is so completely covered by the former adjudications of this court, that it would be useless here again to repeat the reasons and authorities on which they rest to sustain this decision.
But it may not be improper to say that the right of property in the premises having been declared by the decision of this court in the parent case, and the occupancy established by proof, there remains but one other question which is vital to the claimant’s right of recovery; and that is, his right under the Constitution to “just compensation ” for the use of his property. On this point, if other authorities than those found in the former decisions in these cases were needed, they can be found in the recent case of Pumpelly v. Green Bay Company, (13 Wall. R., 166.)
The court, in discussing a kindred question which was presented for decision in that ease, after citing various authorities, say: “.It would be a very curious and unsatisfactory result if, in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the Government, and which has received the commendation of jurists, statesmen, and commentators as placing the jtist principles of the common law on *250 that subject beyond the power of ordinary legislation to change or control them, it shall be held that if the Government refrains from the absolute conversion of real property to the use of the public, it can destroy its value entirely ; can inflict irreparable and permanent injury to any extent; can, in effect, subject it to total destruction without making any compensation, because, in the narrowest sense of that word, it is not taken for public use. Such construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the Government, and make it an authority for invasion of private right under the pretext of the public good, which had no warrant in the laws and practices of our ancestors.”
Again, in the'same case, the learned justices who delivered the unanimous opinion of the court said: ■ .
“We do not think it necessary to consume time in proving that when the United States sells land, by treaty or otherwise, and parts with the fee by patent, without reservations, it retains no right to take that land for public use without just compensation, nor does it confer such a right on the State within which it lies; and that the absolute right and ownership is not varied by the fact that it borders on a navigable stream.”
But it is useless to pursue this argument further. The decision of the case rests on the former adjudications, and under, these the claimant is entitled to recover for the period of three years, nine months, and six days, at the rate of $6,500 per an-num, which we find to be $24,481.32, for which judgment will be entered.