**UNITED STATES v. BAUMAN et al.**
Civil Action No. 1594.

District Court, D. Oregon.
Dec. 6, 1943.

Bernard H. Ramsey, Sp. Asst. to Atty. Gen., James Leavy, Sp. Atty., Department of Justice, of Spokane, Wash., Stanley R. Darling and Bert C. Boylan, Sp. Attys., Department of Justice, both of Portland, Or., and John E. Walker, Sp. Atty., Department of Justice, of Washington, D. C., for plaintiff.

Latourette & Latourette, of Portland, Or., for defendants Bauman.

JAMES ALGER FEE, District Judge.

A complaint in an action for condemnation of "the exclusive right to possession; and use of" lands owned by the individual defendants "for a term of years ending June 30, 1945" "cancellable at the election of the United States" on sixty days notice, either on June 30, 1943, or June 30, 1944, was filed October 27, 1942. "Immediate and exclusive possession" of this real property was granted by this court on the same day, after a statement in open court as to the emergency conditions by a special attorney for the Department of Justice and the possession was taken in accordance therewith.

On April 19, 1943, defendants Bauman filed answer to the complaint setting up that the United States had actually taken possession October 27, 1942, and alleging a value of $14,656 as the just compensation for the interest taken. A reply denies these allegations.

On September 24, 1943, almost a year after the filing of the original complaint and the taking of possession of these lands, the United States filed a motion for leave to file an amended complaint. It is recited therein that on September 17, 1943, by direction of the Acting Secretary of War, a declaration of taking was filed in this court and cause, whereby an estate is claimed in this land described as "a term of years ending June 30, 1944, extendable for yearly periods thereafter during the existing national emergency at the election of the United States, notice of which election shall be filed in the proceeding at least sixty days prior to the end of the term taken, or subsequent extensions thereof" subject to the right to remove improvements and structures within a reasonable time after the expiration thereof.

It is also recited that the United States deposited in the Registry of the Court

$1106.63 "as estimated just compensation for a period beginning October 27, 1942, and ending June 30, 1944."

[redacted] The procedure in condemnation is governed by Oregon law "as near as may be"[1] since expressly excluded by the Federal Rules of Civil Procedure.[2]

[redacted] According to this guide, amendment is not of course, after the filing of an answer.[3] Furthermore, events occurring subsequent to the filing of an original complaint, must be set up by supplemental complaint rather than mere amendment.[4] These rules are not mere technicalities, but as the application to the situation demonstrates, reflect reality. The exercise of a sound discretion guides the court in determining whether amendment or supplement should be allowed to a pleading.[5]

In this instance, the United States went into this property after filing an original complaint setting up the exact interest which it was taking in the land.[6] A court order was granted allowing it to enter under the protection of the court in the exact terms of the complaint. The complaint which instituted the proceedings fixed the rights of the parties. There was no procedure at common law to change the character of the estate created by an entry once accomplished.[7]

[redacted] Congress has committed the acquisition of lands to courts under the judicial process. Where the declaration of taking method is used, the statute[8] specifically provides that this document may be filed "in

---

1 40 U.S.C.A. § 258. This statute is unaffected by the passage of 40 U.S.C.A. § 258a. United States v. 76,800 Acres, More or Less, D.C., 44 F.Supp. 653.

2 Rule 81(a)(7), 28 U.S.C.A. following section 723c.

3 O.C.L.A. §§ 1-1004, 1-1006.

4 O.C.L.A. § 1-1012.

5 O.C.L.A. § 1-1006; O.C.L.A. § 1-1012; May Stores, Inc., v. Bishop, 131 Or. 670, 282 P. 1080; Suetter v. A. E. Kern & Co., 146 Or. 96, 29 P.2d 534.

6 The controlling statute reads as follows: "The Act of July 2, 1917 (40 Stat. 241), entitled 'An Act to authorize condemnation proceedings of lands for military purposes', as amended, is hereby amended by adding at the end thereof the following section: 'Sec. 2. The Secretary of War, the Secretary of the Navy, or any other officer, board, commission, or governmental corporation authorized by the President, may acquire by purchase, donation, or other means of transfer, or may cause proceedings to be instituted in any court having jurisdiction of such proceedings, to acquire by condemnation, any real property, temporary use thereof, or other interest therein, together with any personal property located thereon or used therewith, that shall be deemed necessary, for military, naval, or other war purposes, such proceedings to be in accordance with the Act of August 1, 1888 (25 Stat. 357), or any other applicable Federal statute, and may dispose of such property or interest therein by sale, lease, or otherwise, in accordance with section 1(b) of the Act of July 2, 1940 (54 Stat. 712). Upon or after the filing of the condemnation petition, immediate possession may be taken and the property may be occupied, used, and improved for the purposes of this Act, notwithstanding any other law. Property acquired by purchase, donation, or other means of transfer may be occupied, used, and improved, for the purposes of this section prior to the approval of title by the Attorney General as required by section 355 of the Revised Statutes, as amended.'" Second War Powers Act, 1942, March 27, 1942, c. 199, Title II, § 201, 56 Stat. 177, 50 U.S.C.A.Appendix, § 632.

7 Pollock & Maitland, History of English Law (2d Ed.) Vol. II, p. 92.

8 46 Stat. 1421, c. 307, § 1, 40 U.S.C.A. § 258a: "In any proceeding in any court of the United States outside of the District of Columbia which has been or may be instituted by and in the name of and under the authority of the United States for the acquisition of any land or easement or right of way in land for the public use, the petitioner may file in the cause, with the petition or at any time before judgment, a declaration of taking signed by the authority empowered by law to acquire the lands described in the petition, declaring that said lands are thereby taken for the use of the United States. Said declaration of taking shall contain or have annexed thereto—

"(1) A statement of the authority under which and the public use for which said lands are taken.

"(2) A description of the lands taken sufficient for the identification thereof.

"(3) A statement of the estate or interest in said lands taken for said public use.

"(4) A plan showing the lands taken.

"(5) A statement of the sum of money estimated by said acquiring authority to be just compensation for the land taken.

"Upon the filing of said declaration of taking and of the deposit in the court, to the use of the persons entitled thereto, of the amount of the estimated compensation stated in said declaration, title to the said

the cause" and must conform to the "petition" or complaint therein or the court would not have jurisdiction to proceed. The court thereupon places the United States in possession upon such terms as the court may fix. Under the Second War Powers Act the government is allowed to go into possession under the court order notwithstanding the fact that the title has not been approved by the Attorney General as required by the Revised Statutes, § 355, as amended, 33 U.S.C.A. § 733, or consent obtained from the particular state.[9] But it is plain that permission for filing of the declaration of taking is required and that since the filing is in an action, the consequences are subject to judicial control by dismissal of the "petition" or complaint, or by striking the declaration from the files. See 40 U.S.C.A. § 258f. Here, the United States was placed in possession by order of the court. Possession was granted pursuant to the jurisdiction conferred by the act, to take "real property, temporary use thereof, or other interest therein." Title will not of course pass until final judgment. But there can be no release of the United States from the obligations which it assumed when it filed this suit except by court action. Possession has been assumed and it cannot be abandoned except on terms just to the landowner. The rights in this case have been fixed by the petition for condemnation and the judgment of the court [9a] permitting the taking of possession. There could be modification of these rights by further order and on proper terms. The responsible authority is the Secretary of War and when that official requests the initiation of condemnation proceedings under the judicial process, the United States is committed to all the consequences and when possession has been once taken under a petition asking for a particular interest, the United States is bound to take and pay for that alone, subject to just orders of the court. It was the intention of Congress that the declaration of taking should correspond with the allegations of the "petition". Unless the formalities prescribed by the enactment are strictly complied with, the title would not pass. The declaration of taking must then be filed in the case and agree with the "petition" before, by judicial action, the title passes.

From the language of these acts it is plain that Congress intended the entire matter should be submitted to the determination of the courts. In dealing with real property as distinguished from personal, Congress has consistently chosen an orderly judicial method of protecting the rights of both parties. In this, the ablest writers have set the guides.

"The better opinion is, that the compensation or offer of it, must precede or be concurrent with the seizure and entry upon private property under the authority of the state. The government is bound, in such cases, to provide some tribunal for the assessment of the compensation or indemnity, before which each party may meet and discuss their claims on equal terms; and if the government proceed without taking these steps, their officers and agents may and ought to be restrained by injunction." [10]

Although a court might, if so advised, grant possession of land prior to the deposit of compensation as here, it must be recognized that that would be the exceptional case.[11] It was obviously to meet the objection that possession was grudgingly yielded by the courts where no title was to pass or compensation tendered that the

---

lands in fee simple absolute, or such less estate or interest therein as is specified in said declaration, shall vest in the United States of America, and said lands shall be deemed to be condemned and taken for the use of the United States, and the right to just compensation for the same shall vest in the persons entitled thereto; and said compensation shall be ascertained and awarded in said proceeding and established by judgment therein, * * *."

[9] Rev.Stat. § 355 required the approval of the Attorney General and consent of the state before spending public money on lands so acquired. This requirement was first suspended by 50 U.S.C.A. § 171 for the duration of the emergency in 1917 and right to have immediate possession grant-

ed notwithstanding. This provision, in practically the same form, was carried into the Second War Powers Act above quoted in Note 6.

[9a] United States v. Certain Lands in City of Des Moines, Iowa, D.C., 46 F. Supp. 800; See United States v. Yazoo & M. B. R. Co., D.C., 4 F.Supp. 366; United States F. & G. Co. v. City of Asheville, 4 Cir., 85 F.2d 966.

[10] 2 Kent's Commentaries, 13th Ed., 456 Note (f).

[11] Commercial Station Post Office v. United States, 8 Cir., 48 F.2d 183; Hessel v. A. Smith & Co., D.C., 15 F.Supp. 953; United States v. Eighty Acres of Land, D.C., 26 F.Supp. 315, and rare cases in this court.

statute providing for the filing of a declaration of taking was passed, but that did not mean that this act was not also a part of the judicial process.

It would be a vain thing to require condemnation proceedings to be initiated in a court if, thereafter, a declaration of taking could be filed which related to an entirely different piece of land or an entirely different estate in the same parcel and that title to the parcel or estate passes irrespective of a variance between that and the description in the complaint. Title, therefore, did not pass to the revised estates described in the purported declaration of taking here. The United States, therefore, has a right of possession of this land to June 30, 1945, and may cancel at the end of the period ending June 30, 1943, or June 30, 1944, by giving appropriate notice. Since this proceeding must be based upon a fact which has already taken place as shown by the record of the court, neither by amended complaint nor by supplemental complaint should the government be permitted to attempt to change the character of the proceeding or the nature of its possession. The only matter which remains in this proceeding is to fix the just compensation to be paid by the United States for the property so acquired.

Thus far the question seems purely procedural and depending for solution upon the administrative convenience of the court. However, it seems unjust to the defendants after their property has been taken by entry into immediate and exclusive possession by the United States, to have the interest taken changed arbitrarily and unreasonably without their consent. It seems contemptuous of the court for the Lands Division to proceed to file without leave, a declaration of taking in the court whereby an entirely different interest is sought than is asked when the court put the government in possession.[12] There is an orderly method of procedure which is open to the United States, which protects all the rights and even the convenience of the government. A new suit for condemnation may be filed if the United States has not yet acquired all the interest in this piece of land which is presently necessary. Each suit can then be tried and just compensation set in each respectively.

The clamorous insistance by attorneys of the Department of Justice, Lands Division, that the court adopt the procedure dictated by them and no other, even if another course be indicated by fairness of dealing, by administrative convenience of the court and by the procedural statutes of the State of Oregon which must be the guide, prompts further comment on actions in this and similar cases.

The course of this case has indicated the undesirability of control from Washington D. C. of attorneys dealing with this court.[13] The local staff of the Lands Division, which has included many competent and ethical attorneys, are apparently unable to take steps without approval from above. Instead, attorneys not admitted by this court[14] direct the procedure and policy. The result is that professional ethical standards have been slurred. The insistance upon the entry of a judgment giving the government the right of perpetual renewal without payment therefor, especially in view of the confusing consequences,[15] savors of sharp practice upon the part of the attorneys of the Department of Justice, Lands Division, who are beyond the control of this court. It may be mentioned that this is not the only instance in condemnation proceedings in this district where there has been an arbitrary disregard of the interest of the landowner and citizen.[16] The court, on the other hand, has been vigilant to protect not only the interest of the landowner, whether with or without repre-

---

[12] In a case under the same statute before the present amendment, the Secretary of War had filed a petition in a court to condemn lands in fee simple. Against the contention that the situation had changed and the lands were to be turned over to the city and that a temporary interest would serve, the court say: "The status of this case, and the rights of the parties, were fixed at the time the petition for condemnation was granted, and the further operation of law invoked to ascertain the just compensation to be awarded to the owner." United States v. Forbes, D.C., 259 F. 585, 591.

[13] See Judge Hall's opinion on a related situation. United States v. 1960 Acres of Land, et al., D.C., 54 F.Supp. 867.

[14] Many papers are signed by attorneys in Washington D. C. and local attorneys cannot file a reply without consent from that source.

[15] These consequences are subsequently outlined herein.

[16] Details are not given because here not pertinent.

sentation, but also the interest of the United States.[17]

Since the interest in lands sought under this and similar petitions and declarations of taking is pertinent to the present inquiry, and since the court has not heretofore had the opportunity of expressing views as to the legality of such a declaration of taking or a judgment founded thereon, the claims of the government and the rules of law will now be examined. The court must likewise determine what is to be done with the so-called "Declaration of Taking" in this case.

It is the position of the attorneys for the government that a declaration of taking can be filed in any condemnation case calling for any estate irrespective of whether the declaration of taking corresponds with the complaint in the condemnation action or not. If the declaration of taking is in the present form, it is said the interest taken is a definite term of years (here two years) for which alone compensation is tendered into court. But it is urged, once a rental value for the term of years is fixed by order of the court, that annual rate is established for such period as the government holds the land and that the rental rate cannot thereafter be changed no matter how much the actual value may fluctuate. No compensation, however, is tendered or proposed for the reserved right of perpetual renewal at the option of the United States on the theory that no interest or estate is thereby taken. Finally, the ideas become nebulous as to how this just compensation is to be paid year by year "during the present national emergency." It is not made plain whether the cause must be kept open[18] for the receipt of future payments which would not be in accord with proper court administration,[19] or whether the landowners are to be relegated to the Court of Claims after the United States has discarded the property.

The answers to this position are conclusive. In the first place, just compensation for the acquisition of land taken without the consent of the landowners under eminent domain, requires payment by the sovereign of the full value of the entire interest appropriated. Second, in order to be just, compensation must be paid in full in the immediate condemnation suit which is distinguishable from proceedings in the Court of Claims which latter assume a consensual basis and award the reasonable value for the use of land in the past. Third, judgment in a condemnation case must confirm the passing of title to the United States and place the title to the compensation for the full interest taken in the landowner and thus, if the right of perpetual renewal is not paid for, the United States would not acquire that right even if such a clause were inserted in the judgment.

In answer to these propositions it should first be said that just compensation for the acquisition of land involuntarily under eminent domain requires payment by the sovereign of the full amount of value for the entire interest taken.

In Monongahela Navigation Co. v. United States, 148 U.S. 312, 326, 13 S.Ct. 622, 626, 37 L.Ed. 463, a case where the government had taken a certain lock and dam from a company which held a franchise to receive tolls for the use thereof, by the public, it was held that the principle of just compensation required payment for the franchise to take tolls as well as the value of the tangible property. The court say:

"There can, in view of the combination of those two words, be no doubt that the compensation must be a full and perfect equivalent for the property taken; and this just compensation, it will be noticed, is for the property, and not to the owner. Every other clause in this fifth amendment is personal. 'No person shall be held to answer for a capital, or other infamous crime,' etc. Instead of continuing that form of statement, and saying that no person shall be deprived of his property without just compensation, the personal element is left out, and the 'just compensation' is to be a full equivalent for the property taken. This excludes taking into account as an ele-

---

[17] A number of judgments which had been entered were set aside because it was discovered by the court that the Lands Division, or the War Department, through mistake, had authorized overpayments. The causes afterwards tried before juries, resulted in the entry of judgments for considerably less amounts.

[18] The words "notice of which election shall be filed in the proceeding" seems to contemplate this solution.

[19] The Attorney General formerly, and presently the Administrative Office of the United States Courts, proceed on the theory that no case should depend in a district court for a period of longer than six months.

ment in the compensation any supposed benefit that the owner may receive in common with all from the public uses to which his private property is appropriated, and leaves it to stand as a declaration that no private property shall be appropriated to public uses unless a full and exact equivalent for it be returned to the owner."

In the second place, the just compensation must be paid in the immediate condemnation proceeding. No authority exists nor ever has existed for the payment of just compensation by installments. It has often been said that just compensation need not be paid at the time of, or before the taking of the property, but it has never been said that just compensation was to be paid for less than all the property or that it could be paid in installments. Postponement of the date of payment is often required by judicial delays, but the taking of property envisages the pledge of the faith of the nation to make just compensation.[20]

"If a pie-powder court could be called on the instant and on the spot, the true rule of justice for the public would be, to pay the compensation with one hand, while they apply the axe with the other." Parks v. City of Boston, 15 Pick., Mass., 198, 208.

This principle is carried into a modern opinion based upon this very statute where Judge Waring says:

"I can not believe that the constitutional guarantee that no man's property could be taken without just compensation has any such meaning and that the owners of the property may be forced into receiving annual stipends. Just compensation in my opinion means exactly what it says, and it means that the owner himself is entitled to receive his compensation; not that his estate or his children or his grandchildren are to receive installment payments and perhaps inherit a law suit in the far future." United States v. 9.94 Acres of Land in City of Charleston, D. C., 51 F. Supp. 478, 483, 484.

In opposition to this fundamental thesis that the sovereign under the Federal Constitution must pay just compensation for the interest taken in a condemnation proceeding, the government relies upon several cases in the Court of Claims. In Johnson v. United States [21] the United States took possession of land claimed by Johnson on the north bank of the Columbia River at the Cascades and used it for a military post. Johnson, after the land had been occupied for some time, brought proceedings in the Court of Claims in which he attempted to recover the value of the fee upon the basis of implied contract. The court held that the United States had not taken a fee and therefore the value thereof need not be paid to Johnson. The court ruled, treating the matter as one of implied contract, that the amount which the government impliedly agreed to pay, must be determined after the fact "as though the claimant had leased and the government had rented the premises, regard being paid to the nature of the occupancy and to the fact that the government had the option of discontinuing the implied tenancy on any day or retaining it indefinitely." The court thereupon concluded "that the value of the occupation * * * was $6,500 per annum, payable annually."

The sequel to this case is found in Johnson v. United States [22] where, after eleven years, the government abandoned the military post and the lands in controversy in the previous case reverted to Johnson. Thereupon, the latter again brought proceedings demanding a higher rental, in the Court of Claims. The court held that the valuation fixed in the previous case was binding upon the claimant, saying: "It would, moreover, give to the lessor a great advantage over the government, by enabling him to rest on the value already put upon the occupancy, or to seize upon a favorable season of high prices to come into court and obtain a new appraisement."

When this cause came on for hearing upon the merits, the government contended that the Court of Claims had no right to fix the rental binding in the future in the first case. The court indicates the consent of the parties to this assessment by the continued occupancy. It is said: "After the rule of damages was thus established, it was optional with the Government either to surrender the premises and make a new contract, or hold over under the old implied agreement. It elected the latter, and

---

[20] The statute permitting a deposit and a passage of title by declaration of taking was passed for the express purpose of making such a pledge. No different effect can be ascribed to a taking of possession in a condemnation action.

[21] 2 Ct.Cl. 391.

[22] 4 Ct.Cl. 248, 251.

must be held to the legitimate consequences flowing from its own act * * *." [23]

These cases have been filed in the Court of Claims, but have never been directly approved by the Supreme Court of the United States.

The ultimate basis for holding the claimants to such a rental is squarely stated in Pope v. United States [24] as follows:

"If the occupancy of the Government be unreasonably continued, or changed conditions render the rent unreasonably small, the landlord must procure an express agreement, or take measures to bring the occupancy, or the implied lease, to an end. So long as he does nothing, he assents to a rental based on the value of the occupancy at the time of entry. * * *"

It is contended on the basis of these cases, that the government in a condemnation case can have an annual rental fixed with a clause giving it the right to hold in perpetuity on such terms. The bizarrerie of this doctrine seems to recommend it to the government attorneys.

The pronouncements of the Court of Claims were of grace because the United States need not consent to suit. The right of a defendant in a condemnation case, to receive just compensation for the whole interest taken is of right under the Federal Constitution.[25] The duty thereby placed on the sovereign is categorical. A proceeding in the Court of Claims is founded upon a consensual basis, express or implied;[26]

a proceeding for condemnation is in rem and not only without consent by the landowner, but expressly against his consent and is founded upon the ultimate force of sovereignty. In a Court of Claims proceeding, the value could be fixed on a quantum meruit basis and if the owner was not satisfied, he could have brought proceedings in ejectment, not, indeed, against the United States, but against those of its officers found in possession of this land.[27] In a condemnation suit, the nature of the proceeding and the statute require that full, fair market value of whatever interest is taken, be paid therein. No action can be subsequently brought to recover further compensation.

The third objection to the position of the Lands Division is that the proceeding cannot be held open, but must end immediately in a judgment, positive in terms, conveying the money to the landowner and confirming title to the interest taken in the United States.

Certainly under the procedural doctrines generally accepted and especially under the statutes and decisions of the courts of the State of Oregon, which a federal court must follow, this condemnation proceeding can neither be held open from year to year for the payment of an annual rental, nor can more compensation be recovered than the triers of the fact adjudge the value of the term taken, in any subsequent proceeding. The Oregon courts under the statute contemplate that the triers of the fact

[23] Johnson v. United States, 8 Ct.Cl. 243.

[24] 26 Ct.Cl. 11, 13.

[25] "The duty imposed upon the United States by the amendment is to pay just compensation, and even the Congress of the United States could not excuse it from that obligation or establish a standard of measurement which would necessarily deprive the citizen of any part of it." "The right of action in the land owner where condemnation proceedings are involved, as distinguished from takings under circumstances, in which the right of action arises from implied contractual obligation, is grounded in the Fifth Amendment to the Constitution, or in the specific statute authorizing the taking, or both, and where the right of compensation is so rooted, the case of Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, has no application." United States v. Indian Creek Marble Co., D.C., 40 F.Supp. 811, 818, 820.

[26] "The right to bring this suit against the United States in the Court of Claims is not founded upon the Fifth Amendment * * * but upon the existence of an implied contract entered into by the United States." United States v. North American Transportation & Trading Co., 253 U.S. 330, 335, 40 S.Ct. 518, 520, 64 L.Ed. 935.

"We held in Russel v. United States, 182 U.S. 516, 530, 21 S.Ct. 899, 45 L.Ed. 1210, that in order to give the court of claims jurisdiction, under the act of March 3, 1887 [24 Stat. 505, c. 359], defining claims of which the court of claims had jurisdiction, the demand sued on must be founded on 'a convention between the parties,— "a coming together of minds." ' " Harley v. United States, 198 U.S. 229, 234, 25 S.Ct. 634, 636, 49 L.Ed. 1029. This view is stated in United States v. 9.94 Acres of Land in City of Charleston, D.C., 51 F.Supp. 478, 483.

[27] Wood v. Phillips, 4 Cir., 50 F.2d 714; United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171.

shall fix the value of the estate taken in the particular land and that a preliminary judgment shall enter therefor and that thereafter, upon payment of the money into court in the amount set by this order, a final judgment shall enter. This course of procedure has been followed consistently in condemnation cases in this court for a period of at least twelve years.

There can be no judgment for an indefinite amount, or a judgment payable by installments. The principle is followed that a judgment must be certain in amount [28] and unconditional in effect.[29] Even in declaratory judgments the courts do not attempt to fix rights which are contingent or uncertain as to definite fulfillment. Instead, no judgment is rendered until the rights have become fixed under an existing state of facts.[30] In an action at law in Oregon, on an installment contract, the court cannot, in the absence of an acceleration clause, render a judgment for installments not due at the time of the filing of the complaint.[31] Where a supplemental complaint is filed, a judgment can only be rendered for such installments as are due at the time of the filing of the supplemental complaint.[32] In the ancient case of Foucher v. Leeds, 2 La. 403, it was held that a judgment condemning a defendant to pay rent from inception of the suit until he surrenders possession is erroneous.

The corollary of the proposition that the entire amount of just compensation for whatever interest the United States is taking must be fixed in the condemnation, is that if the case goes to final judgment upon a petition or declaration where just compensation for a two year term only is fixed, the United States will obtain only a term for two years in the property. The clause permitting the United States to renew the lease for an indefinite period will be surplusage. Even if such a term were incorporated in the final judgment, no binding effect could be attributed thereto unless the matter were presented to a trier of the facts and actual compensation given for any interest which would thereby pass from the owner to the United States. There are two reasons why this result follows: First, if the United States has not actually paid for the interest in real property which it has taken, just compensation therefor can always be recovered; second, the principles of res judicata prevents the re-trial of any issue which has been theretofore established between the parties by consideration and judgment, but do not militate against the primary examination of a fact or series of facts which has never been adjudicated between the parties.

Two situations must now be considered: First, the situation where there is no interest or estate in these lands conveyed by the clause of perpetual renewal at the option of the United States; and second, the situation if the interest or estate is thereby conveyed.

Taking up the first point, if an interest or estate in property is not presently conveyed by the clause, then its inclusion in a judgment is not only surplus but deleterious. According to the principles previously stated in this opinion, such a term of years can never develop in a tenancy from year to year unless the landowner consents thereto. The inherent nature of a tenancy from year to year is based on the implied consent of both parties, while here it is attempted to base it upon the will of the government alone. Besides, there is no definition of the term "present emergency". A term for a definite number of years is of course distinguishable. The use of the term "existing national emergency" gives the government the opportunity to hold this property until it chooses to return it, whether the current wars are still waged or not. The declaration of the conclusion of the emergency declared in the first world war was delayed until March 3rd of 1921, over two years after the armistice which closed hostilities. This fact points out the liberty which it is here attempted to be taken with private property. Second, if the clause convey a property interest in the lands, then a more serious damage is done because of the question raised as to whether compensation for the interest taken has not actually been made under the terms of the declaration and the complaint. The confusion thus created may prevent

[28] 33 C.J. 1201, Judgments, § 133; Shires v. Boggess, 72 W.Va. 109, 77 S.E. 542; Frontera Transp. Co. v. Abaunza, 5 Cir., 271 F. 199.

[29] 33 C.J. 1196, Judgments, § 129; Brotherhood. etc., v. Simmons, 190 Ark. 480, 79 S.W.2d 419.

[30] Anderson Declaratory Judgments § 67; Humphrey v. United States F. & G. Co., 38 F.Supp. 224.

[31] Weiler v. Henarie, 15 Or. 28, 13 P. 614; Black Judgments, 2d Ed. § 749.

[32] Wickwire v. Hanson, 133 Or. 85, 288 P. 404.

the unrepresented landowner from realizing what the Lands Division is attempting to accomplish.

It thus becomes clear that whether it be held that such a clause is surplusage or might, if evaluated, convey a property interest, the presence thereof in a judgment clouds the title and the landowner has lost the whole benefit of the fee until such time as the government may see fit to abandon the lands. During the time that the government may retain such lands, there may be tremendous fluctuations in value of the fee; yet the landowner cannot convey the fee because he cannot give marketable title thereto. No one who is advised would accept such a title except upon the theory that he could afford to purchase as a speculation. There is no assurance to anyone that the government will abandon the property within any particular time. The common law rule against perpetuities was developed for the purpose of preventing the creation of interests such as these. The common law defines a perpetuity as an estate which may by any possibility last beyond a life or lives in being plus a period of twenty-one years.

What has been said establishes the fact that a stipulation permitting the United States to renew this lease from year to year in perpetuity without the consent of the landowner constitutes the taking of a valuable property interest at the present time, for which just compensation must be paid in the proceeding. An absolute covenant for renewal creates in the lessee a present equitable estate in the lands.[33] This interest is the right of a possessor of lands to continue therein indefinitely, subject only to his own option to quit the premises. The authority upon the subject says:

"An estate for years with perpetual covenant for renewal is, so far as questions of remoteness is concerned, substantially a fee, and as such it is regarded." [34]

The language of the "Declaration of Taking" is plainly that of an absolute requirement of renewal at the option of the United States.

In the Oregon courts, even if the renewal were conditioned so as to take effect after the happening of events in the future, it might be held there was a violation of the rule against perpetuities. The English rule that renewals conditioned upon the giving of notice in the future or paying a specific penalty as a condition precedent, are not subject to the rule against perpetuities, cannot be justified on principle nor except by a long series of precedents.[35] No one can tell why this illogical exception exists.[36] The presence of this anomaly may be explained by the fact that the doctrine grew up while the rule against perpetuities was young.[37] But the modern tendency to promote early vesting of interests, coupled with the fact that an option to purchase given to a lessee for years, to be exercised at an indeterminate time in the future, is invalid even in England, points to the destruction of an indefinite unconditional renewal of a term of years. The Oregon courts are not bound to the common law rule and are prone to adopt the rule of common sense and therefore might well strictly adhere to the rule against perpetuities.[38]

But if this were not so held, it would be for the reason that the courts adopted the only logical basis for another holding and established the right of renewal at the government's option, unconditioned as it is upon previous payment of rental or giving of notice, as a present equitable estate in the lands. This is a property right for which just compensation must be paid if it be taken in a condemnation proceeding.

In the instant case, although a "Declaration of Taking" has been filed, no tender has been made into court of a sum estimated as just compensation for this present equitable interest created by the clause "extendable for yearly periods thereafter during the existing national emergency at the election of the United States." Expressly there is deposited the rental for two years. Unless the judgment is then limited to the period for which the compensation is tendered and the clause treated as surplusage, the terms of the governing statutes have

---

[33] Moore v. Clench, (1905) 1 Ch.Div. 447, 452.

[34] Gray Rule Against Perpetuities, § 230, p. 231 (4th Ed.).

[35] Woodall v. Clifton (1905) 2 Ch.Div. 257, 265.

[36] Re Tyrells Estate, 1 I.R. 205 (1911).

[37] Holdsworth's History of English Law, Vol. VII, pp. 260, 261.

[38] The heavy weight of authority follows the indefensible English rule. See Note, 3 A.L.R. 498. But see Morrison v. Rossignol, 5 Cal. 64.

not been met and no just compensation will be paid for the present equitable interest created by this clause.

▮▮▮▮▮ By the present "Declaration of Taking," the Lands Division is attempting to limit the amount of just compensation that can be paid for the term of years and is attempting to expressly rule out any compensation for the present equitable interest created by the clause of perpetual renewal. Not even Congress has the power to fix compensation in a condemnation case because that power is judicial. In Monongahela Navigation Co. v. United States, supra, the Court says:

"By this legislation congress seems to have assumed the right to determine what shall be the measure of compensation. But this is a judicial, and not a legislative, question. The legislature may determine what private property is needed for public purposes; that is a question of a political and legislative character. But when the taking has been ordered, then the question of compensation is judicial. It does not rest with the public, taking the property, through congress or the legislature, its representative, to say what compensation shall be paid, or even what shall be the rule of compensation. The constitution has declared that just compensation shall be paid, and the ascertainment of that is a judicial inquiry."

Since the landowner cannot sell his land during the period before the government has finally released it, the annual rental, if now set, might well be reduced to the economic status of the peppercorn traditionally used as ground rent in the middle ages. It is incomprehensible that the United States, in dealing with an individual citizen, should insist on attempting to estimate just compensation upon such an unjust measure contrary to the plain letter of the Constitution of the United States.

If, then, a final judgment were entered in Oregon upon a Declaration of Taking for a term of two years and no compensation was made for the present equitable estate created by the clause of perpetual renewal at the option of the United States, such a clause would be surplusage. There would then be two courses open to the government—an agreement could be made with the landowner to continue for another year on the same terms or a new action for condemnation could be instituted.

In the same situation, three courses would be open to the landowner: First, the landowner could permit the United States to remain in possession until it chose to discard the land and then he could bring an action in the Court of Claims, where, according to the precedents above noted, the rental established in the condemnation suit would probably be accepted as the agreed value. Second, it might be possible to make an agreement with the United States for a higher rental. Third, if the landowner were not satisfied, ejectment could be brought against the agents of the United States occupying the land.

The courts which assume that this problem can be solved by setting a present "annual rental" seem to entirely miss the point that next year the rental value might be a much higher figure. The landowner would certainly not be bound to accept less than the then fair market value, and would be under no compulsion to allow the agents of the United States to remain in possession. The proceeding here would, in the meantime, have gone to judgment, but would not bind the landowner beyond the exact term taken.[39]

It is true that there could be a valuation of the present equitable interest created by the clause of perpetual renewal in this proceeding, but in order to remove the technical difficulties the terms of the deposit should be amended in order to include an estimated just compensation for the interest created by the clause for perpetual renewal. Unless this is done, the court must assume that the Lands Division is attempting to get the full benefit of the interest created thereby without paying anything therefor. The mere words in the judgment would have a compelling effect. The insistence upon the creation of such confusion is the basis for the remarks of the court early in this opinion.

It would be improper for the court to enter a judgment which raises so many perplexing situations and implications, but the only place where the court can stop without muddying the record, is at the point where it is asked to permit the filing of an amended complaint.

The motion to file an amended complaint is, therefore, denied, and the void "Declaration of Taking" is stricken from the files.

---

[39] United States v. 16.747 Acres of Land, D.C., 50 F.Supp. 389–391.