Argued June 17, affirmed July 14, rehearing denied September 22, 1925.

STATE EX REL. KENDALL ET AL. *v.* MOHLER ET AL.

(237 Pac. 690; 239 Pac. 193.)

**Appeal and Error—Competency of Witness a Preliminary Question for Trial Court, and Its Findings not Reviewed, Except for Abuse of Discretion.**

1. Competency of witness a preliminary question for trial court, and its findings not reviewed, except for abuse of discretion.

**Evidence—Witness Held Qualified to Express an Opinion as to the Value of Lands—Weight of Testimony Being for Jury.**

2. In an eminent domain proceeding, where witness testified he had been connected with real estate department of bank for six years, and had sold and appraised realty for sixteen years, and was well acquainted with property throughout state, he was well qualified to express an opinion as to the value of land; the weight of his testimony being for the jury.

**Evidence—Witness' Testimony as to Value of Property Held not Irrelevant or Incompetent.**

3. In eminent domain proceeding, where witness as an expert testified he had known property in question for five or six years, and had observed similar tracts, and was acquainted with property values in general in the state, objections to his testimony as irrelevant and incompetent were not tenable.

**Trial—Statement of Trial Court That He Allowed Exception to Instruction Given Did not have Effect of Withdrawing Instruction.**

4. Where defendants excepted to instruction by court that future indefinite profits were not to be taken into consideration in awarding damages, and court said, "I will allow that exception," such statement did not have effect of withdrawing instruction.

**Eminent Domain—Statute Held not Inconsistent With Statute Relating to Appropriation for Public Parks.**

5. Section 7114, Or. L., permitting land through which streams flowed to be appropriated only for public park purposes, *held* not in conflict nor inconsistent with amendatory act thereto (Laws 1921, p. 742) permitting fish commission to appropriate land for salmon fish culture work.

**Statutes—Act Held not Violative of State Constitution as not Stating Purpose or Object Thereof in Title.**

6. Laws of 1921, page 742, amending Section 7114, Or. L., is not void as violative of Constitution, Article IV, Section 20, in

1. See 28 R. C. L. 449.
2. See 11 R. C. L. 638.

6. Sufficiency of title of statute, see notes in 64 Am. St. Rep. 70. See, also, 25 R. C. L. 850.

failing to state purpose or object of act in its title, inasmuch as its subject matter is germane to the title of the act amended.

**Eminent Domain—Land Held Appropriated for Purposes Specified in Statute Despite Irregularity of Resolution of Fish Commission, Where Complaint was Amended to Conform to Statute.**

7. Where fish commission resolution declared its intention to appropriate land for "fish culture work" under statute which provided for appropriation for "salmon fish culture work," the land was nevertheless appropriated for purpose specified in statute, inasmuch as court permitted commission to amend complaint by inserting word "salmon" before "fish culture work."

**Eminent Domain—Commencement of Cause of Action Held Conclusive Proof of State's Decision to Make Appropriation Without Proof of Preliminary Proceedings Relative Thereto.**

8. The commencement of the action to appropriate land for salmon fish culture work was conclusive proof that the state through the fish commission decided and declared necessity of taking defendants' land for public use and the validity of any preliminary resolutions of the fish commission were not involved; passing of same being not jurisdictional, and pleading and proof thereof not essential to plaintiff's cause of action.

**Constitutional Law—Condemnation Proceedings Held not to Take Property Without Due Process of Law, in View of Constitution and Statutes.**

9. Defendants' objection to condemnation proceedings as taking property without due process of law, in that state could not be sued, and therefore defendants depended on the whim and caprice of the Legislature, was not tenable, inasmuch as Constitution, Article I, Section 18, provides for assessment and tender of compensation before taking of property for public use, and Section 7090, Or. L., was in effect an explicit pledge of faith and credit of state, and hence defendants could not be injured by such appropriation.

**Eminent Domain—Good Faith and Credit of State Need not be Pleaded in Condemnation Proceedings, but Such is Presumed.**

10. Good faith and credit of state need not be pleaded in condemnation proceedings, but such is presumed.

**Eminent Domain—Objection to Appropriation of Land for Failure of Bona Fide Intent to Agree on Price Held not Tenable.**

11. Defendants' objection to appropriation of land for failure of *bona fide* intent to agree on purchase price to be paid defendants for land with improvements thereon was not tenable, in view of facts showing inability to agree with defendants as to price exclusive of improvements, and that defendants were not entitled to compensation for same.

---

9. See 10 R. C. L. 126.
11. See 10 R. C. L. 204.

**Eminent Domain—Damages for Wrongful Detention of Property not Assessable in Action of Eminent Domain.**

12. In action of eminent domain, where defendants counterclaimed for damages for the wrongful detention of property, such counterclaim was properly stricken as, in view of Section 7101, Or. L., damages for wrongful detention of property cannot be assessed in an eminent domain proceeding.

**Eminent Domain—Defendants' Use of Land Held not for Same Purpose as Intended by State so as to Defeat Action of Eminent Domain.**

13. Where appropriation of land by the state fish commission was for salmon fish culture, fact that defendants used land for fish culture did not invoke operation of rule that under power of eminent domain land devoted to public use cannot be taken from private possessor for same use, inasmuch as defendants' use was for private purposes.

**Eminent Domain—Compensation for Land Appropriated Held to Include Damages for Riparian Rights in Private Non-navigable Stream Flowing Through Property.**

14. In eminent domain proceeding, compensation assessed by jury for land appropriated included therein damages for riparian rights in stream flowing through property; it not being contemplated by statute that different proceedings be necessary to condemn land and to acquire riparian rights in non-navigable private stream flowing through property.

**Eminent Domain—No Offer or Attempt to Agree on Value of Condemned Land for Fish Culture Purposes Necessary.**

15. In an eminent domain proceeding, court's refusal to dismiss complaint for reason that plaintiff made no offer or attempt to agree with defendants on value of property for fish culture purposes was not error; such attempt being unnecessary.

**Eminent Domain—Owner of Condemned Property Entitled to Show All Purposes for Which Appropriated Land was Reasonably Adapted.**

16. When land is taken for public use, owner is entitled to show all purposes for which land was reasonably adapted, and it would be error to limit evidence to adaptation of land for specific purposes.

**Eminent Domain—Measure of Damages Reasonable Market Value of Land at Time of Commencement of Action.**

17. In eminent domain proceeding, measure of damages was reasonable market value of land at time of commencement of action.

## ON PETITION FOR REHEARING.

**Costs—Costs Follow Judgment Affirmed.**

18. Costs follow judgment affirmed.

---

16. Evidence of special value of land taken in eminent domain, see note in 124 Am. St. Rep. 536. See, also, 10 R. C. L. 130.

17. See 10 R. C. L. 128.

18. See 7 R. C. L. 800.

Costs—Petition for Costs and Attorney's Fees not Before Supreme Court Where No Cost Bill Filed.

19. Petition for allowance of costs and attorney's fees on appeal was not before Supreme Court for review where no cost bill had been filed.

Costs—Supreme Court not Authorized to Allow Additional Costs on Appeal.

20. Where respondents were allowed $500 as attorney's fees in lower court, Supreme Court was without authority to make an additional allowance on appeal.

Eminent Domain—Judgment, Awarding Damages in Eminent Domain Proceeding by State Fish Commission, Held not Defective Because not Awarding Interest.

21. Judgment, awarding damages in eminent domain proceeding by state fish commission to appropriate land for fish culture, *held* not defective because not stating whether judgment should draw interest since state cannot be compelled to pay interest on its debts without its consent, which must be evidenced by an act of legislative assembly.

Eminent Domain—Judgment in Eminent Domain Proceeding by State Fish Commission Held not Defective Because not Fixing Any Time Within Which State Required to Pay Amount Awarded by Jury.

22. In eminent domain proceeding by state fish commission to appropriate land for fish culture work, judgment awarding damages *held* not defective because not fixing any time within which state was required to pay amount awarded by jury, since state must pay amount of judgment within a reasonable time from date of mandate of Supreme Court or vacate property.

See (1) 4 C. J. 814; 15 C. J. 240, 241. (2) 15 C. J. 256; 22 C. J. 698, 728. (3) 15 C. J. 274; 22 C. J. 695. (4) 20 C. J. 806; 38 Cyc. 1787. (5) 20 C. J. 1061 (Anno.), 1075; 36 Cyc. 1031. (6) 36 Cyc. 1030. (7) 20 C. J. 892 (Anno.). (8) 20 C. J. 892, 947, 1064. (9) 20 C. J. 647. (10) 20 C. J. 948 (Anno.). (11) 20 C. J. 896 (Anno.). (12) 20 C. J. 913 (Anno.), 997. (13) 20 C. J. 601 (Anno.). (14) 20 C. J. 660, 756, 1069. (15) 20 C. J. 895. (16) 20 C. J. 985. (17) 20 C. J. 728.

From Hood River: FRED W. WILSON, Judge.

Department 2.

This is an action by the State of Oregon on the relation of its fish commission, to appropriate 5.44 acres of land for "salmon fish culture purposes" and a right of way adjoining such tract to be

21. Liability of state for interest, see note in Ann. Cas. 1914A, 361. See, also, 15 R. C. L. 17; 10 R. C. L. 163.
22. See 10 R. C. L. 238.

used for road purposes in connection therewith. The land in controversy, through which runs a small non-navigable stream called Herman Creek, is situated near the famous "Columbia River Highway" in Hood River County. An action by the state, commenced in October, 1919, to appropriate a tract of land, including that under consideration, was before this court in *State ex rel.* v. *Hawk et al.*, 105 Or. 319 (208 Pac. 709, 209 Pac. 607), and the case was reversed for the reason that the property sought to be condemned had been withdrawn from appropriation by legislative enactment. After the commencement of the original action Section 7114, Or. L., was amended by the legislature (Gen. Laws of Oregon 1921, Chap. 373), purporting to extend the power of eminent domain to acquire land for fish culture purposes, whereupon, in December, 1922, the present action was instituted. It is alleged, *inter alia,* that it is necessary to acquire the land for public use, viz., for salmon fish culture work, and that such was duly decided by resolution of the fish commission of the State of Oregon. It is further averred that the real property appropriated does not include any buildings or improvements constructed or placed thereon by the plaintiff, and that the state, through its commission, is unable to agree with the defendants as to the price to be paid for the land taken, although effort has been made to do so.

Defendants in their answer aver ownership of the land together with the improvements placed thereon by the state, and deny the necessity of the appropriation or that the fish commission duly declared such necessity to exist. They also deny that any effort was made by the plaintiff to agree with them concerning just compensation, which they say included the improvements mentioned as having a value of $3,000.

As further and separate defenses in brief and in substance it is alleged:

(a) That the complaint shows upon its face a defect in parties defendant in that there are those in possession of the land who have not been joined. The trial court sustained a motion to make this defense more definite and certain by requiring defendants to plead specifically the names of the parties whom they desired to be joined.

(b) That plaintiff went into possession of the land by virtue of a lease for five years dated January 1, 1915, executed by Alfred D. Hawk, then owner of the property; that before the expiration of the lease defendants acquired title from Hawk and demanded possession upon its termination on January 1, 1920, but that plaintiff refused to comply therewith and wrongfully deprived them of the use of their property. Defendants, on account thereof, seek damages by way of a counterclaim, and assert that the rental value of the land during the time of such wrongful detention is $500 per year. Parenthetically, it may be added that when possession was demanded, plaintiff commenced the original condemnation proceedings.

(c) That no necessity exists to acquire defendants' land for fish culture work, as the state owns ample land elsewhere on which it would be more convenient and expedient to carry on such an enterprise.

(d) That the land sought to be appropriated was acquired and is now held by defendants for fish culture purposes, and that they expect and intend to devote it to the same public use as contemplated by the fish commission.

(e) That the plaintiff is guilty of bad faith in that it refused to surrender possession of the property upon expiration of the lease and after reversal of the

original cause by the Supreme Court; that the plaintiff well knew defendants intended to use such property as above stated, and not coming into court with clean hands it ought to be and is estopped from maintaining this action.

On motion of the plaintiff the affirmative answers were stricken for the reason that the matters therein alleged are irrelevant and redundant. Defendants refused to plead further and elected to stand on their answer. On the issues thus made the cause was submitted to the jury, and a verdict was returned assessing defendants' damages in the sum of $5,000. Thereafter the court, on hearing, allowed defendants $500 as attorney's fees. Plaintiff and defendants, being dissatisfied with the amount awarded by the jury, appeal. Plaintiff-appellant assigns error in the admission of certain testimony and the alleged withdrawal of an instruction given by the court at its request. Cross-appellants have twenty-eight assignments of error, but we will direct our attention only to those referred to in the brief under points and authorities or upon which argument has been made, as we deem all other assignments have been abandoned.

AFFIRMED.

For appellant and cross-respondent there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with an oral argument by *Mr. Willis S. Moore,* Assistant Attorney General.

For respondents and cross-appellants there was a brief over the name of *Mr. J. Dean Butler,* with an oral argument by *Mr. Isham N. Smith.*

BELT, J.—1, 2. Plaintiff predicates error on the ruling of the court in permitting witness Woodworth

to express opinion relative to the value of the land in question, for the reason that he had not shown sufficient qualification to do so. We are unable to agree with this contention. The competency of the witness is a preliminary question of fact for the trial court to determine, and its finding in reference thereto will not be reviewed except for abuse of discretion: *Laam v. Green,* 106 Or. 311 (211 Pac. 791); *Multnomah County* v. *Willamette Towing Co.,* 49 Or. 204 (89 Pac. 389); *Farmers' Nat. Bank* v. *Woodell,* 38 Or. 294 (61 Pac. 837, 65 Pac. 520). Woodworth had inspected the premises involved. He testified that he had been connected with the real estate department of Ladd & Tilton Bank of Portland for about six years and for the last sixteen had sold and appraised property in which it was interested. He claimed he was acquainted with farm and city property throughout the state. This witness undoubtedly was qualified to express an opinion. The weight of his testimony was for the jury. In answer to the question, "Now, based upon your experience and your observation, Mr. Woodworth, and your inspection of this property, what would you say is the reasonable market value of this land owned by Mr. Mohler?" witness replied, "I am positive I could sell the land for $15,000." This answer was not responsive and, no doubt, would have been stricken had motion been made to do so. However, that question is not before the court.

3. Similar objection was made concerning the competency of the witness Harbaugh to testify as an expert on value and also that the testimony given by him was irrelevant and incompetent. We believe these objections are untenable. Harbaugh testified that he had known the property for five or six years, had observed similar tracts, and was acquainted with property values generally in the state. As we view

the record, the answer of the witness relative to value pertained to the property in question and not to the adjoining tract as contended by plaintiff.

4. The remaining assignment of error by appellant concerns what is claimed to be a withdrawal of the following instruction:

"I instruct you further that damages of an uncertain or speculative nature cannot be awarded in this proceeding. And any damages awarded must be based upon evidence as to the market value of the land on December 1, 1922. And I instruct you that you are not authorized to award damages based upon indefinite or uncertain future anticipated profits to result from a business enterprise which had not been started at the time plaintiff took possession of the land in question."

The record discloses that counsel for defendants "except to that instruction which the court gave about future indefinite profits not being taken into consideration." Whereupon the court said, "I will allow that exception." We agree the instruction in question was a correct statement of the law, but fail to see wherein it was withdrawn from consideration of the jury. The trial judge's statement that he would "allow that exception" did not have the effect, nor was it intended, to withdraw the instruction. Had the court desired to do so, the jurors undoubtedly would have been cautioned to disregard it in their deliberations. Having held adversely to appellant's contentions, we now pass to a consideration of cross-appellant's numerous assignments of error.

5. Defendants challenge the right of the state, through its fish commission, to exercise the power of eminent domain as proposed herein. It is contended that the amendatory act (Gen. Laws of Oregon 1921, Chapter 373), purporting to vest such

power, is void in that it violates Section 20, Article IV, of the Constitution of Oregon, providing that "every act shall embrace but one subject, and matters properly connected therewith, which subject shall be expressed in the title * * ," and is in direct conflict with the provisions of the original act (Section 7114, Or. L.). Let us consider the original act and the amendment thereto. The title to the original act reads (Gen. Laws of Oregon 1915, Chapter 36):

"An act to preserve the scenic beauty of certain waterfalls and streams in view of, or near, the Columbia River Highway."

Section 1 of the original act enumerated certain streams withdrawn from appropriation, among which was Herman Creek. Section 2 of the act prior to amendment (Section 7114, Or. L.) provided:

"This act shall not prevent the condemnation for public park purposes of any lands through which any of said streams flow, nor affect vested rights or the rights of riparian proprietors of such lands in, or the waters of said creeks or streams."

The amendatory act of 1921, around which this controversy centers, is entitled, "An act to amend Section 7114 of Oregon Laws," and added to Section 2 of the original act the following:

"Nor shall it prevent the condemnation of any lands through which any of said streams flow, for the purpose of establishing, maintaining, and operating thereon salmon fish culture work, nor shall this act prevent the Fish Commission of the State of Oregon from appropriating any of said waters for fish culture work; Provided, however, that no waters shall be taken from above the falls in the streams mentioned in section 7113 of Oregon Laws."

6. It will be observed that prior to the amendatory act, land through which said streams flowed could be

appropriated for public park purposes only. The legislature, in its session of 1921, undertook to vest power in the fish commission to appropriate such land for "salmon fish culture work." In our opinion the acts in question are not inconsistent, nor do they conflict. It is urged that the title to the amendatory act does not state the purpose or object of the act, and is therefore void. While as stated in *Hearn* v. *Louttit,* 42 Or. 576 (72 Pac. 132), many authorities hold the designation of an act in its title as an amendment to a certain section of a law or statute, without any other or further expression of the object of the act, is not a sufficient compliance with the constitutional provision above quoted, yet the more liberal line of decisions, to which we give approval, sustains the validity of such a title: *State* v. *Phenline,* 16 Or. 107 (17 Pac. 572); *Ex parte Howe,* 26 Or. 181 (37 Pac. 536); *Oregon Growers' Co-operative Assn.* v. *Lentz et al.,* 107 Or. 561 (212 Pac. 811). The subject matter of the amendatory act meets the test in that it is germane to the title of the act amended: *State ex rel.* v. *Hawks,* 110 Or. 497 (222 Pac. 1071).

7. Attack is made on the resolution of the Fish Commission declaring its intention to appropriate defendants' property for "fish culture work," as the statute grants the power to condemn land only for "salmon fish culture work." While the resolution is irregular in that it does not conform to the statute in the respect noted, suffice it to say the court, properly exercising its discretion, permitted plaintiff to amend its complaint in this action by inserting the word "salmon" before the words "fish culture work." The land was therefore appropriated for the purpose specified by statute.

8. Contention is made that the resolution was not legally passed in that no notice of the time of meet-

ing was served upon the third member of the commission. The State of Oregon, and not the fish commission, is exercising the power of eminent domain: *State ex rel.* v. *Hawk et al., supra.* The plaintiff is in court, with its duly verified complaint, seeking to exercise that right. Defendants joined issue on the merits, and the preliminary proceedings of the commission are not here involved: 20 C. J. 1064. A similar contention was made in *Matter of New York C. & H. R. R. R. Co.*, 33 Hun (N. Y.), 274, and the court, commenting upon failure to show an authoritative determination of the company to appropriate the land, said:

"We think the determination of the company to that effect is sufficiently shown by its action in instituting this proceeding, by its petition duly verified * *. particularly describing the land, and alleging the purposes for which it needs to acquire it."

Cross-appellants rely on *State ex rel.* v. *Hawk et al., supra,* wherein Mr. Justice BEAN, speaking for the court, said:

"While the section of the statute (Section 7089, Or. L.), refers to procedure, it is also a plain legislative authorization of a proceeding in the name of the state for the condemnation of real property for a public use when the necessity for such acquisition is decided and declared in the first instance by the proper state board."

We believe the commencement of the action is proof conclusive that the state, through its fish commission, decided and declared the necessity of taking defendants' land for public use. The passage of the resolution is not jurisdictional and the pleading and proof thereof are not essential to the maintenance of plaintiff's cause: *Kern County Union High School Dist.* v. *McDonald et al.*, 180 Cal. 7 (179 Pac. 180);

*Otter Tail Power Co.* v. *Brastad,* 128 Minn. 415 (151 N. W. 198).

9. Defendants assert the condemnation proceedings are null and void in that their property is taken without due process of law, "because the complaint does not show nor does the law provide any specific sum which must respond to the judgment as entered." It is claimed, since the state cannot be sued without its consent, that they may be deprived of their property without compensation and that they are dependent solely upon the whim and caprice of the legislature to provide funds with which to pay. Section 18, Article I, of the Constitution reads:

"Private property shall not be taken for public use, nor the particular services of any man be demanded, without just compensation; nor, *except in the case of the state,* without such compensation first assessed and tendered."

It will be observed from the above constitutional provision that private property may be taken for public use by the state without first assessing and tendering compensation. Cases cited where private property is appropriated by others than the state are not in point. Section 7090, Or. L., provides:

"The expenses of such condemnation proceedings and the value of the real property, water, watercourses, and water and riparian rights or interest therein, and the damages for the taking thereof, shall be paid out of the funds provided for the department or institution for which the real property, water, watercourses, and water and riparian rights or interest therein are so acquired, in the same manner as other expenses for like purposes of such department or institution are paid, and if no funds have been provided out of which the same can be paid, payment shall be made out of any funds in the treasury, not otherwise appropriated, and the secretary of state is

hereby authorized to draw his warrant on the treasurer therefor.''

But, say defendants, ''suppose there are no moneys in the treasury—'not otherwise appropriated'—then what?'' Lewis on Eminent Domain (3 ed.), Section 679, answers thus:

''A distinction is usually made by such courts between a taking by the public, that is, by the state or public corporations, and a taking by private corporations or individuals. In the former case the compensation is a public charge, the good faith of the public is pledged for its payment, and all the resources of taxation may be employed in raising the amount. Where, therefore, the law requires the compensation to be paid out of the state treasury * * it is held that such sure and certain provision is made for obtaining compensation as satisfies the constitution''— citing many authorities in support of the text.

10. Section 7090 of the statute is, in effect, an explicit pledge of the faith and credit of the state, and, in contemplation of law, is ample security to the land owner that just compensation will be made. It is not necessary that the good faith and credit of the state be pleaded, for such is presumed: *State ex rel. Peel* v. *Clausen,* 94 Wash. 166 (162 Pac. 1). In any event, the objections made concerning this phase of the case are not material for the reason that the interlocutory judgment entered does not permit the taking of defendants' property until payment for same has been tendered the clerk of the court. It thus appears that cross-appellants cannot be injured.

11. It is urged that this section cannot be maintained for no *bona fide* attempt was made to agree upon the price to be paid defendants for the land taken together with the improvements placed thereon by plaintiff. The complaint alleged, and evidence

was offered tending to show, an inability to agree with the owners upon the price to be paid for the land and easement, exclusive of the improvements. We are of opinion that defendants are not entitled to compensation for the improvements in question, and the instructions of the court on that issue are correct. The plaintiff entered upon the premises in good faith and by virtue of a written lease. It was in no sense a trespasser. The law is well settled adversly to the contention of cross-appellants: *Searl* v. *School District,* 133 U. S. 553 (33 L. Ed. 740, 10 Sup. Ct. Rep. 374); *Oregon R. & N. Co.* v. *Mosier,* 14 Or. 519 (13 Pac. 300, 58 Am. Rep. 521); *Postal Telegraph Co.* v. *Forster,* 73 Or. 122 (144 Pac. 491, Ann. Cas. 1916E, 979); *Chase* v. *Jemmett,* 8 Utah, 231 (30 Pac. 757, 16 L. R. A. 805); *Kansas City etc. Ry. Co.* v. *Second St. Imp. Co.,* 256 Mo. 386 (166 S. W. 296); *Atchison, T. & S. F. Ry. Co.* v. *Richter,* 20 N. M. 278 (148 Pac. 478, L. R. A. 1916F, 969, and exhaustive note thereto where cases are collated); 10 R. C. L. 144.

12. The counterclaim in which damages for wrongful detention of the property are alleged was properly stricken out by the trial court. Section 7101, Or. L., provides:

"The defendant in his answer may set forth any legal defense he may have to the appropriation of such lands or any portion thereof, and may also allege the true value of the lands and the damages resulting from the appropriation thereof."

Whatever damages, if any, defendants sustained by having been kept out of possession of their property cannot be assessed in this action. The statutory enactment above quoted specifies the defenses available, and defendants are limited thereby. We are

concerned with a proceeding in the exercise of the right of eminent domain, and not with an action in ejectment or trespass: *Searl* v. *School District, supra; Jacksonville, Tampa & Key West R. Co.* v. *Adams,* 28 Fla. 631 (10 South. 465, 14 L. R. A. 533).

The law applicable to the extent, necessity and expediency of the appropriation presented by the third and fifth affirmative defenses was stated on the former appeal of this case, and need not be repeated. In support of the conclusions there reached, and here confirmed, see *Adirondack Ry. Co.* v. *New York State,* 176 U. S. 335 (44 L. Ed. 492, 20 Sup. Ct. Rep. 460); *City of Grafton* v. *St. Paul M. & M. Ry. Co.,* 16 N. D. 313 (113 N. W. 598, 22 L. R. A. (N. S.) 1, and note); *Pittsburgh, F. W. & C. R. Co.* v. *Sanitary Dist. of Chicago,* 218 Ill. 286 (75 N. E. 892, 2 L. R. A. (N. S.) 226).

13. In the fourth affirmative defense it is asserted that, under the power of eminent domain, lands devoted to a public use cannot be taken from the possessor by a third person for the same use. This rule of. law is not applicable to the facts herein because defendants were not, nor did they contemplate, devoting their property to a public use, and for the further reason that the land is sought by the state in the exercise of its sovereign power and not by one to whom that power has been delegated: *Adirondack Ry. Co.* v. *New York State, supra; United States* v. *City of Tiffin,* 190 Fed. 279. As to what constitutes public use, see *Bridal Veil Lumbering Co.* v. *Johnson,* 30 Or. 205 (46 Pac. 790, 60 Am. St. Rep. 818, 34 L. R. A. 368); *Anderson et al.* v. *Smith-Powers Logging Co.,* 71 Or. 276 (139 Pac. 736, L. R. A. 1916B, 1089). No error was committed by the trial court in striking the affirmative defenses nor in requiring the answer to be made more definite and certain.

14. Compensation is also claimed for the value of defendants' riparian rights. It is stipulated that Herman Creek is a private non-navigable stream. This creek, therefore, is part and parcel of the land through which it flows, and the value of defendants' water rights therein was included in the verdict of the jury. It is not contemplated by statute that plaintiff be compelled to institute one proceeding to condemn defendants' land and another to acquire their riparian rights in a private non-navigable stream flowing through the land appropriated. A deed conveying the land would certainly include riparian rights incidental thereto, unless they were specifically reserved.

15–17. Cross-appellants contend that the trial court erred in not dismissing the action for the reason that no offer nor attempt was made to agree with them upon the value of their property for fish culture purposes. It was not necessary to do so. Had such offer been made, defendants would have had just cause to complain. When land is taken for public use, the owner is entitled, relative to the question of compensation, to show all purposes for which it is reasonably adapted. It would have been error had the court limited the evidence merely to the adaptation of the land for fish culture purposes. The jury was properly instructed that the measure of damages was the reasonable market value of the land at the date of the commencement of the action: *State ex rel.* v. *Hawk et al., supra.*

From a consideration of this record we are convinced, as was the trial court, that the only issue which should have been submitted to the jury was the amount of damages to be awarded defendants by reason of the taking of their land. Such issue, under

proper instructions of the court, was determined by the jury, and its findings in reference thereto are conclusive on this court. The judgment of the lower court is affirmed.                    AFFIRMED.

RAND, BEAN and BROWN, JJ., concur.

Rehearing denied September 22, 1925.

ON PETITION FOR REHEARING.

(239 Pac. 193.)

For appellant and cross-respondent there was a brief over the name of *Mr. I. H. Van Winkle,* Attorney General, with an oral argument by *Mr. Willis S. Moore,* Assistant Attorney General.

For respondents and cross-appellants there was a brief over the name of *Mr. J. Dean Butler,* with an oral argument by *Mr. Isham N. Smith.*

BELT, J.—18–20. Respondents and cross-appellants petition for an allowance of costs and attorney's fees on appeal. Petition for rehearing or for modification of judgment is also filed. Costs follow the judgment affirmed. However, no cost-bill has been filed, and the matter is really not before the court for decision. In the lower court respondents were allowed $500 as attorney's fees. An additional amount is sought in this court. We are not authorized by law to make such allowance, and the petition in that respect must be denied.

21, 22. In the petition for rehearing or modification of judgment it is suggested that the decision of this court "does not state whether the amount of judgment awarded draws any interest nor the date

from which interest is to be computed." The decision settled all questions at issue under the pleadings. In reference to the matter of interest, see *Young* v. *State,* 36 Or. 417 (59 Pac. 812, 60 Pac. 711, 47 L. R. A. 548), which holds that the state, by reason of its sovereignty, cannot be compelled to pay interest on its debts without its consent, which must be evidenced by an act of the legislative assembly. It is contended that the judgment appealed from does not fix any time within which the state is required to pay the amount awarded by the jury, and, being in possession of the property, it can remain so indefinitely unless a specific date is fixed for the payment of the award. The state must pay the amount of the judgment within a reasonable length of time from the date of the mandate of this court, and unless it so does, the property in question must be vacated.

The petition for rehearing or for modification of judgment is denied.          REHEARING DENIED.

RAND, BEAN and BROWN, JJ., concur.