## UNITED STATES v. CROWN ZELLER-BACH CORPORATION et al.

Civ. No. 1921.

District Court, D. Oregon.

April 16, 1945.

854

Bernard H. Ramsey, Sp. Asst. to the Atty. Gen., and Bert C. Boylan, Sp. Atty., of Portland, Ore., for petitioner.

Clarence D. Phillips, of Portland, Ore., for defendants.

JAMES ALGER FEE, District Judge.

An action for condemnation of a large tract of land in different ownerships was instituted under title of United States of America v. William Sherlock Company et al., No. Civil 1885. Thereafter a declaration of taking was filed in that cause and possession of the entire tract granted the Government by order of the court. Subsequently, in accordance with the procedure prescribed for the state courts,[1] the particular parcel was severed by order of the court and a new action commenced against Crown Zellerbach Corporation as the owner thereof. The complaint sets up a hybrid form of interest in land which the United States is to acquire.[2]

---

[1] United States v. Hayden Island Amusement Co., an unpublished opinion of this court dated November 6, 1939. There the court held that the joinder of several tracts of land in diverse ownership did not affect jurisdiction. However, it was indicated that there was, under the Oregon Code, a misjoinder of causes of action.

[2] The complaint alleges: "That the estate taken for said public use is the exclusive use of the lands hereinafter described for a period of one year with the right to renew from year to year for the duration of the War Emergency as determined by the President and three years thereafter, together with the improvements thereon, if any, with the right of the Government to remove all improvements placed thereon by the Government at the termination of such use." And: "That in said Declaration of Taking the Acting Commissioner of the Federal Public Housing Authority allocated the sum of $500.00 to be just compensation for the taking of the exclusive use of the lands above described

Crown Zellerbach Corporation filed an amended answer which consists of a general denial on information and belief of all important allegations of the complaint. Included is a "Further and Separate Answer to Petitioner's Petition and by way of a Petition for Compensation". The gist of this further and separate answer is a claim that the United States agreed to take fee-simple title to the land by means of friendly condemnation and pay $10,000 therefor.[3] There is an allegation that $500 per year for exclusive possession is inadequate and the further allegation that $900 rental for the first year, and each succeeding year, should be allowed "in any judgment or decree entered."

The reply denies the affirmative matter set up in the further answer and denies that any sum greater than the sum of $500 plus the actual taxes for state, county and municipal purposes levied against said lands, is a just and reasonable rental for the interest taken by the petitioner for the period of one year.

■ The course of the case upon the pleadings is highly interesting. The Lands Division and the landowner have each been inflexible adherents of the respective theories and each has rigidly followed its own method of pleading. The result is that no issue has been formulated. The landowner has presented evidence that the United States was obligated to and actually did take a fee-simple estate. The Government pleads that it is taking a lease for one year plus an alleged hybrid interest in futuro, but alleges only deposit of rental for a year, and in the reply is guilty of departure in alleging a different reasonable value for a year than that alleged in the complaint.[4] This is not permissible procedure under the Oregon statutes and no system should permit such a hodgepodge which prevents either court or counsel from discovering what the dispute is about. Had these pleadings been recited orally, the court might have well exclaimed with the testy justice of common law: "Get to your business. You plead about one point, they about another, so that neither strikes the other." [5]

■ These defects persisted through the hearings. Upon the presentation of testimony one side testified about one thing, the other side about another. It was a clear demonstration of the principle that the function of pleadings in any system should be to make an issue. The case came before the court for hearing upon motion of the Government on July 27, 1943. No agreement was made by either side to submit the cause to the court sitting without a jury. Crown Zellerbach introduced proof which tended to show that there were negotiations between agents of Crown Zellerbach and representatives of the Housing Authority of the Government. There was mention made of a lease of the premises by representatives of the Government, but the suggestion did not get a favorable response by the Crown Zellerbach Corporation. The testimony indicated that after a proposition was made of condemnation in fee for the sum of $10,000, the Crown

for a period of one year with the right to renew from year to year for the duration of the War Emergency as determined by the President and three years thereafter together with the improvements thereon, if any with the right of the Government to remove all improvements placed thereon by the Government at the termination of such use; * * * ."

3 Paragraph 3, Page 3, Amended Answer of Defendant Crown-Zellerbach: "That prior to the commencement of the above entitled proceeding the Petitioner negotiated with the answering defendant for the sale and purchase of the fee simple title to the above described property; that in said negotiations the above Petitioner offered to purchase the above described premises from this defendant for the sum of Ten Thousand Dollars ($10,000.00), and represented to this defendant that if immediate possession of said properties was granted by this defendant to the said Petitioner that immediate friendly proceedings would be commenced in the court for the condemnation of the said fee simple title of said premises at an appraised value of Ten Thousand Dollars ($10,-000.00) and that said amount would be paid to this answering defendant pursuant to said condemnation proceedings; that this answering defendant accepted said offer and, pursuant thereto, immediately relinquished possession of said premises to the above Petitioner, and that the said Petitioner went into immediate possession of said premises and erected structures thereon prior to the time of the commencement of this cause of action."

4 United States v. Bauman, D.C., 56 F.Supp. 109.

5 Bereford, J. in Y.B., 3 Ed.II 169 (S.S.) quoted from Holdsworth's History of English Law, Vol. II, p. 551.

Zellerbach Corporation granted a license to the Government and delivered it to one James S. Whitney, a land advisor for the Federal Public Housing Authority. This license, which was introduced, was irrevocable for a period of ninety days beginning January 13, 1943, and gave permission to enter into and upon the lands herein involved with specific authority "to do and perform any act which the government deems necessary to expedite the construction of its project," and was not by its terms conditioned either upon the commencement of a condemnation case, or the taking of a fee. The proof shows that the agents of the United States did. enter and commence the construction of a federal housing project and there was evidence that an agreement was expressly arrived at for the taking in fee at the price mentioned.

There was no attempt by the United States to meet this proof. After a continuance, the United States introduced one witness who testified that he had been engaged to set the fee value upon this piece of land and that in his opinion the reasonable market value of such interest was the sum of $10,000. There was an attempt upon the part of the Government to get this witness to testify as to a yearly rental value based upon a lease with the right of perpetual renewal, but he refused to so testify. However, upon further examination, he said that a fair annual rental value of the property would be $500 a year provided that the Government paid the taxes.

The Government at this point, on August 10, 1943, requested the court for an indefinite continuance in order to get witnesses who would testify upon its theory. Counsel for the Government stated that in his opinion the evidence offered was not sufficient to found a judgment and an order fixing value. Upon December 18, 1943, the matter was called to counsel's attention and counsel again stated that there was no further testimony which could be submitted. The court thereupon declared the case under submission and took the matter under advisement. The Lands Division attorney thereupon took exception to this action of the court. No determination was possible on the Government's theory, and the court made none. No further proceedings were had in the case at that time.

After some time, a statement was made in open court by one of the attorneys of the Lands Division, to the effect that the United States was about to negotiate a lease in the Crown-Zellerbach case.[6] Based upon this statement, on the 15th day of June, 1944, the court orally stated from the bench that if the matter could have been submitted to the court on the basis of the counterclaim, a finding that the land was taken in fee simple and a just compensation therefor of the sum of $10,000 might have been justified, but since the United States desired to negotiate a lease, time was extended for the purpose of filing an amended complaint. Immediately the Lands Division asked attorneys for Crown Zellerbach to draw a judgment for $10,000. This was done, but the court refused to sign the entry since there had never been any intention to grant a judgment in that state of the record, as will hereafter abundantly appear. Then the Lands Division served notice that it was the intention to appeal from the supposed judgment. Since no judgment was ever pronounced, this gesture was futile.

Many months later, the United States Lands Division reversed its former position that the matter could not be treated as under submission and filed a motion that the court should grant judgment appropriating the lands to the United States and finding the value of occupancy for one year to be in accordance with the testimony above reviewed.

The evidence adduced by the defendant might justify a finding that the United States, through its agents, had agreed to take the fee at a price of $10,000 and intended entry under the option and condemnation proceedings to be taken in accordance therewith.

If such were the situation, the finding would bear weight of a judgment. Danforth v. United States, 308 U.S. 271, 280, 281, 60 S.Ct. 231, 84 L.Ed. 240. But there is no intention upon the part of this court, upon this record, to enter such a judgment now anymore than there was when the court first mentioned the possibility.

██ Entirely other principles must control the disposition of the instant case. The pleadings must rule. It is clear that the further and separate answer is a counterclaim. If there were any doubt, the limited applicability of the evidence introduced by Crown Zellerbach would be conclusive. But the United States has not con-

---

[6] It was afterwards explained that another action of the same title was intended.

sented to the maintenance of a counterclaim here. Furthermore, under Oregon procedure, no pleading of a counterclaim is possible in an action for the condemnation of land.

"The counterclaim in which damages for wrongful detention of the property are alleged was properly stricken out by the trial court. Section 7101, Or.L., provides:

" 'The defendant in his answer may set forth any legal defense he may have to the appropriation of such lands or any portion thereof, and may also allege the true value of the lands and the damage resulting from the appropriation thereof.'

"Whatever damages, if any, defendants sustained by having been kept out· of possession of their property cannot be assessed in this action. The statutory enactment above quoted specifies the defenses available, and defendants are limited thereby. We are concerned with a proceeding in the exercise of the right of eminent domain, and not with an action in ejectment or trespass. * * *" State v. Mohler et al., 115 Or. 562, 576, 237 P. 690, 695, 239 P. 193.

 Based upon this authority, the court strikes the counterclaim from the files. The result is that Crown Zellerbach has produced no relevant evidence. The hypothetical proof brought forward as to the market value of a fee is incompetent upon the counterclaim thus stricken. It is likewise incompetent as to any other interest sought to be taken because no founding evidence was adduced. Hypotheses have no basis unless there is proof of facts to sustain the inferences or deductions. The trier of the facts must test the validity of the opinion, but his judgment must be based on factual evidence.[7]

The United States did not prove a case either. The United States produced one witness who testified he had seen the land and gave his opinion of the value of the fee and likewise as to his opinion of the value of a leasehold for a year. Continuance was granted to permit the Lands Division to produce a witness who would testify as to value of the exact interest sought by the Government. But no such witness was ever produced.

The reason the United States was unable to get a witness to testify as to the value of the particular interest which the declaration indicated was taken, appears not to be casual, but practical and fundamental. This appears clearly by the responses of witnesses questioned in other cases of this sort. The perils for the landowner in the taking of this type of estate are therein indicated.[8]

 In the particular case at this time,

---

[7] Wigmore says (Evidence, Third Edition, § 672), relating to opinion testimony: "The reasoning may be explained in the following propositions: 1. Testimony in the shape of inferences or conclusions *rests always on certain premises of fact.* * * * If the witness has not considered or had·in mind these premises, his inference or opinion is good for nothing. 2. *These premises,* a consideration of which is essential to the formation of the conclusion or opinion, *must somehow· be supplied to the jury by testimony.* * * *

"The key to the situation, in short, is that there may be two distinct subjects of testimony—premises and inferences or conclusions; that the latter involves necessarily the former; * * * i.e. of distinguishing conclusions properly founded from conclusions improperly founded." See Wigmore, Evidence, Third Edition, §§ 1962, 1969.

[8] In United States v. City of Portland et al.,* Civil 1880, a portion of the examination of one of the experts for the Government is as follows:

"Q. Did you have occasion to make an appraisal of these lands in connection with their acquisition by the United States in this proceeding and for this project for the purpose of determining the fair rental value of the lands as of the date of March 11, 1943, taking into consideration that the estate and interest being acquired by the United States in this proceeding is described as the exclusive possession and the exclusive use in and to the lands described for the period of one year, with the right to renew from year to year for the duration of the war emergency as determined by the President and three years thereafter, with the right of the Government to remove all improvements placed thereon by the Government at the termination of such use? A. I would like to say that I appraised the value—appraised the property to find the value of the fee. I think I am competent to judge what the rental value or the lease-

---

* No opinion rendered. See United States v. Fee, 9 Cir., 138 F.2d 158, 159.

no judgment for the United States would be possible for several reasons. The year originally contemplated by the declaration of taking has long since expired. There is no allegation that the United States has remained in possession and thereby taken a longer term. A supplemental complaint is necessary to set up events transpiring subsequent to the filing of an original complaint. Neither the present complaint nor the declaration are sufficient. It is true that the Second War Powers Act gives author-

hold value or what the rate of payment is.

"Q. Well, the question is, have you formed an opinion as to the rental value? A. Yes, I have.

"Q. Now, taking both the parcels together, based upon that opinion, is it your conclusion and opinion that the sum of $675 constitutes the full, fair rental value for the period taken as described for the leasehold interest in the particular premises? A. Yes, sir.

"Q. That being an annual rental? A. Yes, sir.

\* \* \* \* \* \* \*

"Q. What is your fee value? A. On the parcel A, $4,900, and parcel B it is $9,000.

"Q. How long is the war going to last? A. Well, of course, none of us know that, but with vacant property it is questionable. Now, for somebody to pay the taxes for you and to give you a fair return on that investment is something that a lot of people would like to have, and, of course, this appraising real estate, as you know, is not, perhaps, an exact enough science that you can put your finger right on the exact penny, but on the other hand the return of 4½ to 5 percent net on vacant land does not seem out of order or out of line.

"Q. Taking a term of this sort, do you think that it is not comparable to taking the fee? A. Well, I could see how it might be comparable to taking the fee because if they could continue year after year to lease the property it would be tantamount to taking the fee.

"Q. For how long are they going to take the property? A. Well, that we don't know, but I dare say that the majority of vacant property owners would be eager to grasp just such an opportunity as these vacant property owners have.

"Q. Well, are you appraising their state of mind or are you appraising the land? A. Well, I am sorry, but when you brought the question up about how long the war was going to last, why, that, you see, other things came to my mind; that is probably argumentative, and I shouldn't have done it.

"Q. No, I am just trying to test out the basis of your judgment. A. Well, vacant properties have been in the doldrums so long and it is taxed so heavily in proportion to its value that to get a fair return on it is, as I say, something that a lot of people would be very eager to grasp.

"Q. Oh, a lot of people might be eager to sell it at a fair market appraisal, too, of the fee value. A. Yes, that is true.

"Q. And, actually, you can't state what the length of the war is going to be, and likewise you can't state the period of the emergency afterwards. For instance, do you remember the length of time that the emergency lasted in this country after the last war? A. Yes.

"Q. Do you remember about what time that was? A. Well, I don't know exactly what you mean by the emergency.

"Q. Well, there was a period when the President of the United States declared the emergency was ended. A. Uh-huh.

"Q. Do you know when that was? A. I don't remember the date.

"Q. Well, it was approximately at the end of 1920, and the Armistice was November 11, 1918. A. Yes.

"Q. Can you appraise how long it is going to take the President of the United States when this war is ended— A. (interrupting) No.

"Q. (continuing)—to declare the end of the emergency? A. No.

"Q. In other words, the basis of your judgment is speculation as to what length of time this land is going to be under Government control? A. Yes. Perhaps no one would buy the land with the idea of making this kind of—at the fee value for the idea of making the lease, because the lease wouldn't be made for a long enough period to warrant anybody in buying it for that purpose.

"Q. About what do realtors ordinarily consider a leasehold value as against a fee value? In other words, the term of years? What term of years do you figure makes the fee value so nebulous that you can't appraise the difference between them? It is ordinarily considered about twenty years, isn't it? A. Yes.

"Q. But you are not sure that this leasehold is going to last for twenty years? A. No, we don't figure that it is going to last that long. Of course, my viewpoint is that, in the first place, they should not be allowed to—if you are going to take somebody's property,

ity to condemn interests in land or personal property, or temporary occupation of land.[9] But a declaration of taking was filed in this case. The act permitting the filing of a declaration of taking admits of a deposit to cover an estate or interest in land.[10] There is grave doubt under the authorities above cited whether an option can be a property interest under the terms of the statute. If it is not a property interest, the inclusion of the clause in this case would be surplusage.[11]

Thus, the difficulties raised by this form of description of the interest taken are for all practical purposes insuperable. First, under one construction, without consent of the landowner it creates an interest hostile to him which may run beyond a life or lives in being and twenty-one years.[12] Although historically such a result could be accomplished consensually, it is an anomaly and is contrary to modern policy.[13] Here, without consent of the landowner, the title might be clouded and rendered unmarketable [14] without compensation for a period of years unless the situation is alleviated by evaluating the interest taken as a fee.[15] Second, the effect of the option clause might be viewed as rendering the leasehold of indefinite duration and perhaps void on the common law principles [16] unless the vagueness were eliminated by construing it as a term for one year, or some specified period.[17] Third, under certain decisions an option for renewal was not property for which compensation need be paid if it were voided in a third party by eminent domain. If these decisions be followed, the United States did not obtain any right to occupy the premises beyond the definite time specified and acquired no property interest by the inclusion of the "duration clause".

All of which brings us to a dilemma inescapable except by two routes. Either the United States, under this clause, obtains a

---

just my own viewpoint is that you should take it and not just lease it, because you might get the land back at a time when there isn't any market, and you might be taking it at a time when there is a market; but if the property is to be leased and the Government has a right to take it, then I would say that 4½ to 5 percent is a fair return to the property based upon its value.

"Q. The obligation of the Government of the United States is to pay just compensation. If the Government is taking the land under a lease that may last and absorb the fee value, should you not appraise it at the fee value of the property? A. Well, appraise the property at the full fee value?

"Q. No, I mean appraise the taking at the full fee value? A. Well, I can see your point.

[9] 50 U.S.C.A.Appendix, § 632.

[10] 40 U.S.C.A. § 258a.

[11] United States v. Bauman, supra.

[12] Accordingly, it should be given the value of a fee simple. Gray Perpetuities, 4th Ed., § 230. See also cases which treat such an interest as a fee: J. W. Perry Co. v. Norfolk, 220 U.S. 472, 31 S.Ct. 465, 55 L.Ed. 548; Connecticut S. C. M. Association v. East Lynne, 54 Conn. 152, 5 A. 849.

[13] United States v. Bauman, supra.

[14] The fee title is rendered unmarketable by the existence of an interest in a third party which involves the possession of the real property for a time the duration of which is not definitely fixed.

See Note, 59 A.L.R. 233–248; Fruhauf v. Bendheim, 127 N.Y. 587, 28 N.E. 417; Downey v. Levenson, 247 Mass. 358, 142 N.E. 85.

[15] The interest of the holder of the fee-simple title subject to the interest taken by the Government in this case, of indefinite duration would seem to be comparable to that of a party holding a possibility of reverter. A possibility of reverter is of negligible value according to the authorities and so depends upon possibility that there may never be a breach that is not compensable in a damage action. Romero v. Department of Public Works, 17 Cal.2d 189, 109 P.2d 662; Chandler v. Jamaica Pond Aqueduct Corp., 125 Mass. 544. See Lyford v. Laconia, 75 N.H. 220, 72 A. 1085, 22 L.R.A.,N.S., 1062, 139 Am. St.Rep. 680.

[16] As to leases with a consensual basis containing such a clause, see 1 Plow. Rep. 269; Co.Lit. 45B; 4 Bacon's Abridgment 836; Cooley's Blackstone, 4th Ed., § 546; Stanmeyer v. Davis, 321 Ill.App. 227, 53 N.E.2d 22, 25; Lace v. Chandler, C.A.1944, 1 All-England Law Reports 305; Illinois Law Review, Vol. XXXIX, May–June 1944, No. 1, p. 85.

[17] Commenting on the indefinite character of the clause, the Illinois Court of Appeals say: "If we could regard the end of the war as a certainty, this alleged agreement would still leave us in doubt for the reason that it does not refer to any particular war of the several in which we are engaged." Stanmeyer v. Davis, supra.

property interest and pays the present value thereof (which may equal the fee value), or the United States acquires a leasehold for one year and pays for that term.

 Some decisions have been called to the court's attention in which judgment has been granted upon a petition and declaration of taking such as exemplified here. But the answer is equally clear. If in the proceeding here, or in any condemnation proceeding where the judgment was given in the exact language of the declaration here, but the United States deposited only the rental value for one year and paid nothing for a property interest attempted to be created by such language for an additional period, the United States could hold only for one year under the judgment. It is axiomatic that the United States will obtain only the exact property for which "just compensation" has been paid no matter what the recitals of the judgment. An attempt to exercise the so-called option would be invalid. At the end of the year the landowner would be entitled to maintain ejectment notwithstanding the inclusion of such language in the judgment. The United States is required to pay just compensation for property taken. If just compensation has not been paid, and its officers wrongfully hold possession, they may be ejected. United States v. Lee, 106 U.S. 196, 1 S.Ct. 240, 27 L.Ed. 171.

 Even if all the difficulties were avoided in this particular case, there was no scintilla of evidence as to the market value of the interest which it is claimed the United States obtained in this proceeding. No one pretended even hypothetically to testify as to the value in this land of "the exclusive use thereof for a period of one year with the right to renew from year to year for the duration of the War Emergency as determined by the President and three years thereafter together with the improvements thereon, if any, with the right of the Government to remove all improvements placed thereon by the Government at the termination of such use."

 But passing all this, the attorneys for the Lands Division have conceded that there is not sufficient evidence to found a judgment for the Government, as above noted. This is clear to anyone who reads the transcript. No evidence was introduced as to the lie or character of the land; no physical description was given. The improvements were not described. The surrounding property was not described. The access and facilities in the neighborhood were not demonstrated. The court did not see the premises. The sales of similar property in the vicinity were not detailed. There is no basis for independent valuation or exercise of judgment on evidence as to just compensation.[18] The unsupported opinion of one witness who had himself seen the land but who gave no testimony as to the facts observed, was not sufficient, without any other evidence, to give a basis to a trier of the facts for the value of the fee or of a leasehold for a year.[19] The attorneys of the Lands Division properly took exception when the court previously, upon the same record, took the

---

[18] See Note 7.

[19] The practical results of accepting, in an uncontested case, such opinion testimony as a basis for finding of value without the benefit of a factual background are exemplified in E. C. Shevlin Co. v. United States, 9 Cir., 146 F.2d 613. In that instance the United States suffered. In United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 280, 87 L. Ed. 336, 147 A.L.R. 55, opinion testimony as to value of real property is accurately described as "at best, a guess by informed persons" and as such it is not binding upon the trier of the facts whether judge or jury. In Head v. Hargrave, 105 U.S. 45, 49, 26 L.Ed. 1028, it is said, "To direct them to find the value of the services from the testimony of the experts alone, was to say to them that the issue should be determined by the opinions of the attorneys, and not by the exercise of their own judgment of the facts on which those opinions were given. The evidence of experts as to the value of professional services does not differ, in principle, from such evidence * * * as to the value of property." If the per curiam opinion of the Circuit Court of the Seventh Circuit in United States v. 685.2 Acres of Land in Lake County, Ill., 146 F.2d 998, holds anything to the contrary, it is wrong and unsupported by the authority which is therein cited. See United States v. 2.4 Acres of Land, 7 Cir., 138 F.2d 295; The Conqueror, 166 U.S. 110, 131, 17 S.Ct. 510, 41 L. Ed. 937; United States v. Miller, supra; Standard Oil Co. v. Southern Pacific Co., 268 U.S. 146, 45 S.Ct. 465, 69 L.Ed. 890.

case under advisement. The "trial" was therefore abortive. The present motion of the Government is denied. The parties are directed to amend or supplement their respective pleadings [20] as they may be advised in the light of this opinion, and thereafter, when an issue has been made, the cause will be set for trial.

---

[20] The declaration of taking can properly be amended to restate the interest taken. Since an order granting possession upon a declaration of taking is simply an intermediate step and not a final judgment, the court must have power under proper circumstances to permit the agency or officer to file an amended declaration. See Catlin v. United States, 65 S.Ct. 631.