Argued September 12; affirmed October 26;
rehearing denied November 20, 1945

# SHAVER FORWARDING CO. *v.* EAGLE STAR INSURANCE CO., LTD.
# SHAVER FORWARDING CO. *v.* UNIVERSAL INSURANCE CO.

(162 P. (2d) 789)

Before Belt, Chief Justice, and Rossman, Kelly, Lusk, and Brand, Associate Justices.

*MacCormac Snow,* of Portland, for appellants.

*Gunther F. Krause,* of Portland (Walter H. Evans, of Portland, on the brief), for respondent.

BELT, C. J.

These consolidated actions—here for the second time—were commenced to recover upon two identical marine insurance policies for damages sustained to a 250 ton stern-wheeler steamboat, "The Dalles", while it was being hauled upon marine ways from the waters of the Columbia River at Rainier, Oregon, by Ericksen & Klepp, independent contractors. On the first trial it was contended by the plaintiff that the loss or damage to the boat was caused: (1) By waves from a passing steamer while "The Dalles" was being hauled endwise from the river and that such constituted "perils of the seas" within the meaning of the policies; and (2) By defective hog chains breaking while the vessel was being hauled from the water, thereby causing the vessel to sag. It was the contention of the insurance companies: (1) That the damage was not the result of either of the above causes but was the result of improper methods by Ericksen & Klepp in hauling the vessel from the water; and (2) That the

plaintiff, the owner of the vessel, failed to exercise due diligence in the premises. On these issues, thus briefly stated, the cause was submitted to the court and jury, and a verdict returned in favor of the plaintiff. Judgments were entered upon such verdict and the insurance companies thereupon appealed to this court. The judgments were reversed (*Shaver Forwarding Company v. Eagle Star Insurance Company, Ltd., and Universal Insurance Company,* [Oregon] 172 Or. 91, 139 P. (2d) 769) by reason of an erroneous instruction given by the court relative to "perils of the seas"—this court being of the opinion that the facts did not involve such peril—and the cause was remanded for a new trial. It was held, however, that the defendants were not entitled to a directed verdict since there was evidence tending to show that the loss was caused by the latent defects in the hog chains. In other words, the court refused to weigh conflicting evidence and held that a jury question was presented as to whether there was any liability under the policies.

On the second trial, the causes were submitted to the court without a jury and judgments against the defendants were again entered. It is from these judgments that the defendants have once more appealed to this court. For a more complete statement of the facts out of which these actions arose, see opinion on former appeal.

■ It is conceded that if the loss or damage to the vessel was caused by the negligent acts of either the owner or the independent contractors, there would be no liability under the policies. It is also admitted that if such loss or damage was "directly" caused by latent defects in the hog chains, the insurers assumed such risk. Appellants admit that the evidence now before

us for consideration, relative to the cause of loss or damage to the vessel, is substantially the same as it was on former appeal.

Under this state of the record, we think the rule of the "law of the case" applies, and appellants are in no position again to assert that there is no evidence tending to show any latent defects in the hog chains. *Green Mountain Lumber Co. v. Columbia & Nehalem River Railroad,* 146 Or. 461, 30 P. (2d) 1047; *Johnson v. Ladd,* 144 Or. 268, 14 P. (2d) 280, 24 P. (2d) 17; *Adskim v. Oregon-Washington R. & Nav. Co.,* 134 Or. 574, 294 P. 605; and numerous authorities therein cited. It was also settled that whether such defect was the proximate cause of the loss was a question of fact for the determination of the jury. The extended argument in the brief of appellants relative to this phase of the case, including the blocking of the stern by Ericksen & Klepp, is merely a repetition of the argument made on first appeal, and we think merits no further consideration.

■ On this appeal defendants apparently have proceeded on the theory that this is a trial de novo and that the findings of the circuit court can be reviewed to determine whether they are in keeping with the weight of the evidence. We do not so consider the record. These law actions were submitted to the court to be tried without a jury and its findings clearly have the force and effect of a verdict of a jury. § 5-503 O. C. L. A. It is well settled that if the findings of the circuit court, in a law action, are supported by some substantial evidence this court on appeal is conclusively bound thereby. *Simmons v. Jarvis,* 163 Or. 117, 95 P. (2d) 725; *Burke Machinery Co. v. Copenhagen,* 138 Or. 314, 6 P. (2d) 886.

Appellants find some support in *Wakefield, Fries & Co. v. Sherman, Clay & Co.*, 141 Or. 270, 17 P. (2d) 319, an action at law tried by the court without a jury. In this case, plaintiff sought recovery of the reasonable value of services performed as a broker. The circuit court entered judgment for the plaintiff in the sum of $4500. On appeal, the majority of the court was of the opinion that there was no evidence to support such judgment in excess of $2000 and reduced the judgment accordingly, stating: "We are at liberty to disregard any finding by the trial court if evidence is not sufficient to sustain the finding." We think it was not intended by the court to hold in such actions that conflicting evidence will be reviewed on appeal. Mr. Justice RAND, author of the opinion in the Wakefield case, speaking for the court in *Northwest Oil Co. v. Haslett Warehouse Co.*, 168 Or. 570, 123 P. (2d) 985, referring to § 5-503 O. C. L. A., more accurately thus stated the rule: "Under these provisions, the findings of the trial court upon the facts are as binding and conclusive upon this court as if the findings had been made by the jury and cannot be set aside unless it can be held that the evidence fails to sustain it."

■ We agree that no inference of defective condition of the hog chains could be drawn from the mere fact in itself that they broke while the vessel was being hauled upon the ways. If, however, due care was exercised by Ericksen & Klepp in hauling out the vessel, they had the right to assume, in absence of notice to the contrary, that the hog chains would serve the purpose for which they were intended. If no undue strain was put upon the hog chains, and the method used by Ericksen & Klepp was in keeping with the degree of care exercised by persons of ordinary prudence and

caution engaged in such business, then an inference of defective condition of the hog chains might reasonably be drawn from the fact of breaking. Relative to such matter, the court on former appeal said:

> "The defendants also contend that there is no evidence that the damage was 'directly caused' by defects in the hog chains. We will not attempt to follow counsel through the elaborate argument which has been submitted upon this point. It all seems to us to be a question of proximate cause, which is ordinarily, and we think in the present case, a question of fact. We do know that the hog chains parted, and immediately thereafter the stern of the vessel was let down and steam lines, pipes and planks broke. If the jury believed that Erickson & Klepp were free from negligence, it was competent for them to find that the hog chains would not have broken had they not been defective and that the defects, therefore, were the direct cause of the damage. If, on the other hand, the jury believed that Ericksen & Klepp were negligent in failing to block the stern of the vessel and subjecting the hog chains to a strain which they were not intended to bear, they would be authorized to find that this negligence was the proximate cause of the damage. In that event there could be no recovery, because a loss due to the negligence of independent contractors is not covered by the policy." 172 Or. 91, 139 P. (2d) 769.

■■ Error is predicated on the refusal of the court to permit Captain R. C. Passmore to express his opinion as an expert that there was improper blocking under the stern as the vessel was being hauled upon the ways; that it would be "possible" to attach blocks to the cradle before letting it down in the water in such manner as to support the stern and thereby lessening the strain on the hog chains; and that if he had known there was no

blocking on the cradle at the stern when Ericksen & Klepp started hauling the vessel out he would have ordered them to stop. The evidence shows that Captain Passmore had extensive experience as a navigator on the Columbia River and that he had often seen stern-wheeler vessels hauled upon the ways but had no experience as a builder or operator of a marine ways. He was permitted to describe the different methods of hauling boats upon marine ways, but we think no error was committed in rejecting his testimony relative to what he considered was improper blocking when the end-haul method was used. His qualification to testify as an expert on such subject was determined by the trial court, and its ruling in reference thereto will not be disturbed where no abuse of discretion has been shown. *State v. Mohler,* 115 Or. 562, 237 P. 690, 239 P. 193; *Laam v. Green,* 106 Or. 311, 211 P. 791, 90 A. L. R. 1404 note; *Multnomah County v. Willamette Towing Co.,* 49 Or. 204, 89 P. 389; *Farmers' & Traders' National Bank v. Woodell,* 38 Or. 294, 61 P. 837, 65 P. 520. There was no evidence that the end-haul was not a standard method of hauling vessels upon marine ways. Most of the testimony offered by Passmore pertained to side-haul methods. It was not permissible for Passmore to have testified as to what he "might" have done had he known there was no blocking under the stern.

■ The court did not abuse its discretion in excluding photographs of a different vessel which was being side-hauled upon a different kind of a marine way. These photographs did not throw any light on the controversy in question, and might, indeed, be misleading. *DeWitt v. Sandy Market, Inc.,* 167 Or. 226, 115 P. (2d) 184.

■ Appellants in effect assert that the court should have held as a matter of law that Mr. Lew Russell, General Manager of the plaintiff, was negligent in allowing the vessel to be hauled out on the marine ways of Ericksen & Klepp, as the ways was not suitable for such purpose. No contention of this kind was made in the trial court, and we are not impressed with it here.

■ When these causes were remanded after reversal of the judgments on former appeal, the defendants obtained an ex parte order from Honorable Alfred P. Dobson, presiding judge of the circuit court, permitting them to file an amended answer in which two new and distinct defenses were alleged. The first of these defenses is based upon the claim of plaintiff for a return of part premium paid on the policies on account of the vessel being laid up and out of use for a period extending from August 4, 1938, to June 24, 1939. Defendants claim that plaintiff represented to them that the vessel was not repaired at the expense of the defendants at any time during the said lay-up period. The policy of insurance issued by each of the insurance companies provided in part as follows: "At the expiration of this Policy, to return 46-5/12 per cent. net for every thirty consecutive days the Vessel may be laid up in port out of commission * * * (provided that no return be made for any thirty-day period * * * during which repairs having Underwriters' accounts are affected)." In the "Lay-Up Certificate"— on the form prepared and submitted by the defendants —the plaintiff, in response to the question, "Was the vessel repaired at the underwriters' expense at any time during the lay-up period", answered: "No." Defendants assert that this answer is false and that the plaintiff, by reason thereof, ought to be estopped

from now asserting any claims against them. There is nothing in the record to indicate any intention on the part of the plaintiff to waive its claims of liability against the defendants. Neither do we see any element of estoppel involved. It is true that the defendants were not liable under the policy for the thirty-day period during which repairs were being made at its expense; however, the plaintiff tendered into court the sum of $48.74 for each of the defendants, to reimburse them for such return of the premium alleged to have been induced by the representations of the plaintiff. The amount of such tender was taken into account by the circuit court in entering judgments against the defendants, and they were given credit therefor.

Aside from the fact that there is no merit in this defense, we think the court abused its discretion in permitting an amendment setting forth a substantial change of defense. The facts constituting such defenses were known to the defendants at the time of the first trial and yet were not urged as a ground for non-liability under the policies. It is too late for them to do so now and thereby inject into the case a new and distinct defense. *Bank of Commerce v. Ryan,* 157 Or. 231, 69 P. (2d) 964. The rule is thus stated in 5 C. J. S. 1526:

> "After determination on appeal and remand to the lower court, a party will not be allowed so to plead as to open up matters already adjudicated by the appellate court, nor will he be allowed, without showing a sufficient reason therefor, even under statute, to plead matters which existed and were known by him at the time of the first trial and might then have been pleaded by him."

■ The second defense set forth in the amended pleading is that the plaintiff is not the real party in interest, since it assigned its claim against the defendants to Ericksen & Klepp. No evidence was offered to support this defense, and there is no assignment of error pertaining thereto. It will, therefore, be passed without further comment.

The judgments of the circuit court are affirmed. An additional sum of $150 will be allowed in each case as attorneys' fees on this appeal, as authorized by § 101-134 O. C. L. A.